Edward S. Maloney et al. [1] v. Commissioner. Maloney v. Commissioner
Docket Nos. 52589-52592.
United States Tax Court
T.C. Memo 1958-39; 1958 Tax Ct. Memo LEXIS 191; 17 T.C.M. (CCH) 174; T.C.M. (RIA) 58039; March 10, 1958
*191 Maloney and his wife Dorothy owned 75 per cent of the stock of S & M Sales Corporation. S & M made certain payments to its stockholders and deducted the amounts as traveling and entertainment expenses. Respondent disallowed these amounts and made other adjustments to S & M's income for the fiscal years ended February 29, 1948 and February 28, 1949. Respondent also increased the individual petitioner's income for 1947 to 1950, inclusive, determining that certain expenditures of S & M constituted dividends to the shareholders and also made other adjustments to their income. Additions to the tax for fraud were determined for all parties for all years. Held: (1) that respondent's determinations with regard to the income of the petitioners are upheld in part; (2) that Maloney's separate return for 1947, Maloney's and Dorothy's joint return for 1948, and S & M's returns for the fiscal years ended February 29, 1948 and February 28, 1949, were false and fraudulently filed and part of the deficiencies is due to fraud with intent to evade tax; (3) that Dorothy's separate return for 1947 was not fraudulently filed and none of the deficiency is due to fraud with intent to evade tax and the proceeding *192 against her for that year is barred by the statute of limitations under section 275(a) and (c), Internal Revenue Code of 1939; and (4) that Maloney's and Dorothy's joint returns for 1949 and 1950 were not false and fraudulently filed and none of the deficiencies is due to fraud with intent to evade tax. Max M. Bernstein, Esq., 16 Court Street, Brooklyn, N. Y., for the petitioners. Charles M. Greenspan, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in income tax and additions thereto under sections of the Internal Revenue Code of 1939, [2] as follows: Additions to the Tax
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(1)(A)
Sec. 294(d)(2)
Edward S. Docket No. 52589
Maloney
1947
$33,252.74
$16,626.37
$3,427.04
$2,056.22
Dorothy T.
Docket No. 52590
Maloney
1947
1,729.63
864.82
134.16
80.49
Edward S. and Docket No. 52591
Dorothy T.
Maloney 1948
13,367.16
6,683.73
820.36
1949
543.34
271.67
1950
720.18
360.09
32.80
19.68
S & M Sales Docket No. 52592
Corporation,
FYE 2-29-48
17,113.47
8,556.74
FYE 2-28-49
9,308.02
4,654.01 The deficiencies are due to the following adjustments: Edward S. Maloney - 1947
(a) Constructive Dividends from S & M Sales Corp.: Checks for travel and entertainment
$16,870.61
Furniture for residence
1,553.54
Loan to J. J. Dowdle
30,000.00
$48,424.15
(b) Travel and entertainment disallowed
2,080.00
Total increase in income * *193 $50,504.15
Dorothy T. Maloney - 1947
(a) Constructive Dividends from S & M Sales Corp.: Salary *
$ 5,000.00
Checks for travel and entertainment
5,811.47
$10,811.47
(b) Travel and entertainment disallowed
250.00
Total increase in income *
$11,061.47
Edward S. and Dorothy T. Maloney
1948
1949
1950
(a) Constructive Dividends from S & M Sales Corp.: Salary * (Dorothy)
$ 5,500.00
Furniture
3,015.75
Rent
$ 874.25
Checks for travel and entertainment
20,431.24
3,606.99
$ 239.35
Totals
$28,946.99
$ 4,481.24
$ 239.35
(b) Travel and entertainment disallowed
2,875.00
250.00
100.00
(c) Contributions
150.00
(d) Salary income
3,786.66
Total increase in income *
$31,971.99
$ 4,731.24
$ 4,126.01
S & M Sales Corporation
FYE 2/29/48
FYE 2/28/49
(a) Purchases disallowed
$ 3,015.75
(b) Salaries disallowed
6,000.00
$ 9,500.00
(c) Interest disallowed
122.18
(d) Depreciation disallowed
103.57
155.35
(e) Travel and entertainment disallowed
35,393.93
15,318.15
(f) Professional fees disallowed
400.00
(g) Bad debts disallowed
5,083.59
Total increase in income
$45,035.43
$30,057.09
Edward S. Maloney and Dorothy T. Maloney owned 75 per cent of the stock of the corporate petitioner. Edward S. Maloney controlled it. Many of the adjustments are due to the disallowance of certain claimed deductions of S & M Sales Corporation *194 which were based on payments made by S & M to the individual petitioners and to certain third parties. Respondent determined that these payments constituted dividends and included them in the income of the individual petitioners. All of the adjustments have been placed in issue by the pleadings and petitioners contend that the statute of limitations bars all of these proceedings. The proceedings have been consolidated. Findings of Fact A stipulation of facts has been filed and is incorporated herein by this reference. General The petitioners Edward S. Maloney, hereinafter sometimes referred to as Maloney, and Dorothy T. Maloney, hereinafter sometimes referred to as Dorothy, are husband and wife and during the years involved they resided in Westbury, New York. They presently reside in Menlo Park, California. They filed separate individual income tax returns for the taxable year 1947 and joint individual income tax returns for each of the taxable years 1948, 1949, and 1950, with the collector of internal revenue for the first New York district. Petitioner S & M Sales Corporation, hereinafter sometimes referred to as S & M, a Texas corporation, filed corporate income tax returns for *195 its fiscal years ended February 29, 1948 and February 28, 1949, with the collector of internal revenue for the second Texas district. The petitioners, Maloney and Dorothy, are both high school graduates. During the period 1929 to 1938, Maloney worked variously as a pilot, aviation instructor, airport manager, and in aircraft sales and maintenance. Commencing June 24, 1938, Maloney was employed by the Texas Company, hereinafter referred to as Texaco, for which he worked mainly as pilot and chief pilot in its executive division, New York Aviation. From June 24, 1938 to March 1, 1940, Maloney supervised the construction of airports for South American Gulf Oil, a subsidiary of Texaco, for a freight line being set up in connection with the construction of the Barco pipeline in South America. His duties involved selecting and recommending equipment to be purchased. From June 16, 1942 to July 19, 1944, when airplanes were unavailable to Texaco, Maloney was placed on leave of absence to Grummann Aircraft, and Transcontinental and Western Airlines. In 1946, when he was back with Texaco as a pilot, he supervised the purchase of aircraft and equipment. In connection with the purchasing of aircraft *196 and equipment for Texaco, Maloney became acquainted with Dan Fowlie, hereinafter sometimes referred to as Fowlie, of the Executive Transport Corporation of Dallas, Texas, hereinafter referred to as Executive, which had some war surplus airplanes for sale. Through Maloney Texaco made purchases from Executive. In the latter part of 1946, Maloney was told by the chairman of the board of Texaco that if he could find time from his duties with Texaco he might help the Arabian American Oil Company, hereinafter referred to as Aramco, in which Texaco had a substantial interest, set up an aviation division. Commencing in November 1946, Maloney devoted time to Aramco, which was seeking to establish an airlift to Saudi Arabia. On October 15, 1947, Texaco gave Maloney a leave of absence so that he might devote full time to Aramco. As manager of Aramco's new aviation division, Maloney was responsible for the purchase of large quantities of aircraft equipment and supplies for Aramco and he approved the invoices and vouchers. Maloney returned to his duties at Texaco sometime prior to June 30, 1948. On March 13, 1947, Maloney caused the incorporation of S & M under the laws of the State of Texas. The *197 original incorporators were Maloney, Fowlie, who was president and principal stockholder of Executive, and G. W. Hutchinson, who was the latter's attorney. S & M had authorized capital stock of 1,000 shares of common of $1 par value per share. Shortly after the incorporation the shares of Fowlie and Hutchinson were transferred, 250 shares going to Dorothy who was named secretary and treasurer, and 250 shares to Harold O. Seymour, hereinafter referred to as Seymour, the chief mechanic for Texaco Aviation Division. Seymour was named vice president of the corporation. Maloney was president and was the only officer authorized to sign checks for S & M. Seymour's personal friendship with Maloney began in the 1920's and he worked with Maloney as a copilot prior to 1938, and subsequent thereto as a fellow employee of Texaco. Fowlie had put up the money to start S & M. Maloney did not tell anyone at Texaco that he had gone into business in Dallas with Fowlie. Maloney did not notify Aramco as to the formation of S & M. Executive paid Maloney a commission, or paid S & M a commission, on the sale of certain equipment which Executive sold to Aramco. Such commissions on Aramco business which Executive *198 paid to S & M were at the rate of approximately 10 per cent. Maloney and Seymour were discharged from the employ of Texaco on July 1, 1948. On March 20, 1950, Texaco brought an action against Maloney, Dorothy, and Seymour in the United States District Court for the Eastern District of New York. Thereafter, Texaco obtained by deposition the sworn testimony of a number of witnesses. On November 30, 1953, the defendants in this action signed and filed a stipulation consenting to judgment, which was entered against them on February 8, 1954, in the sum of $138,581.97. Aramco instituted an action against Maloney, Dorothy, S & M, Seymour, G. Gunther Wallen, G. Gunther Wallen Corporation, and Charles L. Foley, doing business under the firm name and style of Foley & Co., in the Federal District Court for the Eastern District of New York. Maloney and S & M did business with the latter two parties. The second amended complaint in this action was filed on February 9, 1951. Thereafter, the sworn testimony of a number of witnesses was taken by deposition. The defendants in the aforesaid action duly executed a stipulation dated November 30, 1953, consenting to judgment for Aramco. On March 9, 1954, *199 this stipulation was filed with the court and judgment was entered for Aramco in the amount of $999,331.69. Issue 1 Traveling and Entertainment Expenses S & M claimed a deduction for "Travel and entertainment" expenses for the fiscal year ended February 29, 1948, in the amount of $35,393.93. S & M claimed a deduction for "Travel and delivery" expenses for the fiscal year ended February 28, 1949, in the amount of $15,318.15. The claimed deductions consist of the following amounts paid by S & M during the following periods: FYE
FYE
Name
2/29/48
2/28/49
Total
E. S. Maloney.
$22,393.37
$10,101.22
$32,494.59
D. T. Maloney
8,386.36
3,497.42
11,883.78
H. O. Seymour
4,614.20
1,719.51
6,333.71
Liquor
292.07
0
292.07
Total
$35,686.00
$15,318.15
$51,004.15
The respondent disallowed the entire amount claimed by S & M for the fiscal year ended February 29, 1948, except the payment of $292.07 for liquor and also disallowed the entire amount claimed for the fiscal year ended February 28, 1949. The respondent explained the adjustments by stating that the amounts disallowed represent payments to the individuals for expenses which were not substantiated. The above-mentioned payments to Maloney and Dorothy were received by *200 them as follows: Calendar Year
Received
Maloney
Dorothy
1947
$16,870.61
$ 5,811.47
1948
14,817.03
5,614.21
1949
806.95
458.78
Total
$32,494.59
$11,883.78 Maloney also received additional payments in the amounts of $2,341.94 in 1949 and $239.35 in 1950 from S & M. Such amounts were charged on S & M's books to travel and entertainment expenses. [3]
Neither Maloney nor Dorothy, on their separate returns for the year 1947 or on their joint returns for the years 1948, 1949 and 1950, included any of the amounts set forth in the prior paragraph in their income. The respondent determined that the above amounts received by them were dividends and includible in their income. Maloney and Dorothy also deducted on their individual returns (separate returns for 1947 and joint returns for 1948, 1949, and 1950) the following amounts as travel and entertainment expenses: Name
1947
1948
1949
1950
Maloney
$2,080
$2,875 $250 $100
Dorothy
250 The respondent disallowed all claimed amounts on the ground that they were unsubstantiated. During the years 1947 and 1948, when Maloney was an employee of Texaco, he submitted vouchers to Texaco setting forth various *201 categories of claimed expense. These categories included "transportation expense," "hotel room," "meals," "bus, taxi or carfare," "telegraph and telephone," "porter and hotel tips," "laundry and valet service, " and "other" expenses, while Maloney was on company trips from one listed place to another. The monthly expense vouchers submitted by Maloney to Texaco during the period March 1, 1947 to October 15, 1947, showed claimed expenses totaling $3,749.60 for the 8 1/2 month period. Such vouchers were approved for payment and payment was made to Maloney. Texaco did not require invoices to support and substantiate the amounts claimed in Maloney's vouchers. When Maloney traveled for Texaco he received bills covering the expenses incurred. During his employment by Texaco Maloney flew Texaco planes in his capacity as pilot. When it was necessary for Maloney, on the business of Texaco, to obtain transportation from commercial airlines he used the air travel credit card furnish him by Texaco, whereby Texaco paid the airlines directly the cost of such transportation. There were about five instances where Maloney charged air travel expense to Texaco. Maloney submitted similar itemized monthly *202 expense reports to Aramco for the period November 1, 1947 through March 31, 1948. The amounts claimed in the five monthly vouchers submitted to Aramco, totaling $1,220.79, were paid to Maloney on June 23, 1948. As shown by the flight logs, Maloney was furnished with company transportation when working for Aramco. Maloney submitted to S & M 12 monthly expense vouchers, on forms similar to those submitted to Texaco, for the period March 1, 1947 to February 29, 1948, and for the period April 1, 1948 to November 30, 1948. Expense vouchers, in the name of Dorothy, which were apparently in the same handwriting as Maloney's expense vouchers, were submitted to S & M for the period March 1, 1947 to November 30, 1948. Expense vouchers in the name of Seymour were submitted to S & M for the period March 1, 1948, to January 30, 1948. Maloney included numerous items of expenses on the S & M vouchers which he also had included on the vouchers for Texaco and/or Aramco and for which he was reimbursed by Texaco and/or Aramco. The vouchers submitted by Maloney to S & M contain duplications of items included in the Texaco and Aramco vouchers and there are patent inconsistencies between the vouchers. For *203 example: 1. On the S & M voucher Maloney charged to S & M the cost of air transportation from New York to San Francisco on September 28, 1947, of $149.67. On the Texaco voucher he also charged air transportation of $165.20 for the same flight. The correct rate for such flight on that day was $149.68. Both S & M and Texaco were charged for other expenses of the trip such as hotel, meals, etc. 2. Maloney's Texaco voucher showed him to be traveling from New York to Dallas on September 6, 1947, and staying there in Dallas until September 15, 1947. Maloney's S & M voucher showed his going from New York City to Ram Island, New York, on September 4, 1947 and staying there until September 7, 1947, when he returned to New York City and left for Dallas on September 11, 1947. 3. Maloney charged the correct plane fare of $76.07 from Dallas to New York on both the S & M and Texaco vouchers for that trip on March 5, 1947. 4. On March 27, 1947, Maloney was a part of the crew of an Aramco airplane which went from New York to Dahran via Gander, Shannon, Paris, Geneva, Rome, and Cairo. The plane returned to New York on April 15, 1947. Maloney charged transportation cost for that trip to S & M. 5. Maloney's *204 S & M voucher indicates that Maloney was in Miami from February 2, 1948 until February 10, 1948, while his Aramco voucher indicates that he was in New York on February 5, 1948. 6. The bill for the Maloneys' stay at the Fairmont Hotel in San Francisco from September 28, 1947 to October 3, 1947, indicates that the hotel charged $12 per night for a room for Maloney and Dorothy. Maloney's S & M voucher had a $12.50 charge for a hotel room; his Texaco voucher had an $8.90 charge for a room; and Dorothy's S & M voucher had a $12 charge for a room. Neither Maloney nor Dorothy expended any amounts for traveling and entertainment expenses in connection with a trade or business or in connection with employment by S & M for which they were not reimbursed by S & M. The deductions claimed on their separate individual returns for 1947 in the amounts of $2,080 (Maloney) and $250 (Dorothy) and the deductions claimed on their joint returns for 1948, 1949, and 1950, in the amounts of $2,875, $250, and $100, respectively, did not represent traveling expenses while away from home in pursuit of trade or business. The amounts paid by S & M to Seymour in the fiscal years ended February 29, 1948 and February *205 28, 1949, in the respective amounts of $4,614.20 and $1,719.51, were not ordinary and necessary business expenses or traveling expenses of S & M. The amounts paid by S & M to Dorothy in the fiscal years ended February 29, 1948 and February 28, 1949, in the respective amounts of $8,386.36 and $3,497.42, were not ordinary and necessary business expenses or traveling expenses of S & M. The amounts paid by S & M to Maloney in the fiscal years ended February 29, 1948 and February 28, 1949, in the respective amounts of $22,393.37 and $10,101.22, were not ordinary and necessary business expenses or traveling expenses of S & M to the extent of $16,393.37 (fiscal year ended 1948) and $7,101.22 (fiscal year ended 1949). The amounts received by Dorothy from S & M in the years 1947, 1948, and 1949, in the respective amounts of $5,811.47, $5,614.21, and $458.10, were income to her in those years and did not constitute reimbursement for expenses of S & M. The amounts received by Maloney from S & M in the years 1947, 1948, 1949, and 1950, in the respective amounts of $16,870.61, $14,817.03, $3,148.89 ($806.95 plus $2,341.94), and $239.35, constitute income to him to the extent of $11,870.61 (1947), *206 $11,817.03 (1948), and $1,648.89 (1949). The amounts of $5,000 (1947), $3,500 (1948), $1,500 (1949), and $239.35 (1950)constitute reimbursement for deductible traveling expenses of S & M. Issue 2 Purchases from Ann Angell Co.
(a) Purchase of $1,553.54. Maloney set aside one room in his house about 9 X 12 in size for partial use as an office. It was furnished as a den with a small library. The room was used for the purpose of conducting S & M's business and also for personal use. Ann Angell Co., hereinafter sometimes referred to as Ann Angell, an interior decorating firm, owned and operated by Benjamin Goldberg, hereinafter referred to as Goldberg, rendered a bill dated June 26, 1947, to S & M for the following items: S & M Sales, Inc.
Dallas, Texas
Office Carpets
$ 640
Office Carpets
120
Office Carpets
240
Carpet Lining
35
Draperies
450
Billing Machine
35
Stationery
6.80
Safe
26.74
$1,553.54 The bill was paid by S & M's check dated the same day. The respondent's agent investigating this matter requested Goldberg to furnish copies of all transactions with Maloney. Goldberg gave the respondent's agent a true copy of the aforementioned bill. However, the copy was addressed to Maloney personally rather *207 than to S & M and the word "office" did not precede the word "carpet." The amount of $1,553.54 paid by S & M was capitalized on its books. In the fiscal years 1948 and 1949, S & M deducted depreciation on its corporate returns on the amount of the $1,553.54 at the rate of 10 per cent per year in the amounts of $103.57 and $155.35, respectively. The respondent determined that the above-described expenditure of $1,553.54 was for "Furniture & Fixtures for personal residence" and accordingly increased Maloney's income for 1947 by $1,553.54. The respondent also determined that deductions for depreciation claimed by S & M were unallowable, explaining the adjustment as follows: "Depreciation on home furnishings of Edward S. Maloney, erroneously capitalized is an unallowable deduction." One-half of the expenditure of $1,553.54 related to the business of S & M and one-half was for Maloney's personal use. As a result of the expenditure, Maloney received a constructive dividend in the amount of $776.77, rather than $1,553.54 as determined by the respondent. Allowable depreciation on the $776.77 expended for assets of S & M is $51.79 (one-half of $103.57) and $77.68 (one-half of $155.35), rather *208 than $103.57 and $155.35 claimed by S & M. (b) Purchase of $3,015.75. S & M, by its check dated February 1, 1948, paid Ann Angell $3,015.75. The payment was charged on the books of S & M to purchases. The items for which the payment was made were not included in the inventory of S & M at February 29, 1948. The $3,015.75 was deducted on the corporate return of S & M for the fiscal year ended February 29, 1948, as part of cost of goods sold. The respondent's agent inspected the bill of Ann Angell in the files of S & M for which the $3,015.75 was paid. The bill showed the following: Dec. 1, 1947
The S & M Sales Corp.,
Dallas, Texas.
Rebuilding and Timing Transmitters
10 A R T - 13 Aircraft at $250.00 each
$2,500.00
Parts
515.75
$3,015.75
Besides Ann Angell's name and address the billhead indicated that Ann Angell was "Interior Decorators," "Airplane Designers," and "Mercantile Designers." The respondent's agent, believing that Ann Angell was an interior decorator, requested Goldberg to furnish true copies of his bills representing his transactions with Maloney. Goldberg gave the respondent's agent a bill which showed the following: Mr. E. Maloney
Westbury, L.I., N. Y.
Maloney
Dec. 28, 1947
1 slip cover
$ 45.00
1 office chair
50.00
3 lamp shades
20.00
1 chair upholstered
45.00
1 6 by 6 hair mattress, 1 6 by 6
box spring
300.00
1 chair repair bottom
15.00
1 bed room chair reupholstered,
1 chair new duplicating above
120.00
4 bedroom windows draped and
val.
415.00
1 bedspread to fit above bed,
gathered skirt separate
100.00
2 cases
87.00
3 cases
130.50
1 filing cabinet
75.00
1 television
400.00
Ditto chair and pull drape
150.00
1 dishamatic
231.00
sunroom carpet
156.00
1 sofa cover
85.00
2 pr. double Ninnon lace curtains
gathered
60.00
1 Chalmers gas range
295.00
kettles
5.75
1 tufted head board
100.00
3 cases
130.50
$3,015.75
*209 The respondent increased S & M's income by $3,015.75 for the fiscal year ended February 29, 1948, explaining the adjustment as follows: "(a) Cost of redecorating services, performed by Ann Angell and Company, to the personal residence of Edward S. Maloney is unallowable as a deduction. The respondent also increased Maloney's income for the year ended December 31, 1948 by $3,015.75 determining that the expenditure by S & M constituted a dividend to him." Only one payment in the amount of $3,015.75 was ever made by S & M to Ann Angell. Goldberg did not personally prepare the bill for the transmitters. He knew nothing about the type of work involved in rebuilding transmitters or anything about the purported transaction. Goldberg also operated a business known as Aero Contractors which, although they had their own billheads, sometimes billed customers on Ann Angell billheads. Maloney purchased from Ann Angell the furniture included in the bill dated December 28, 1947. The furniture purchased was for Maloney's personal use. The S & M check dated February 1, 1948, was in payment of that bill. The payment in the amount of $3,015.75 by S & M to Ann Angell constituted the distribution of a *210 dividend to Maloney. Issue 3. Loans to J. J. Dowdle John J. Dowdle, hereinafter sometimes referred to as Dowdle, was the father of an old acquaintance of Maloney. Dowdle asked Maloney for a short-term loan of $15,000 so that he could discharge certain tax liens against the property of a company which he and his family operated. Shortly thereafter, Dowdle asked Maloney for another loan of $15,000 for the same purpose. Maloney and Dowdle spoke of the possibility of going into business together after Dowdle's company started operating again. Maloney did not have sufficient personal funds to loan Dowdle the money he needed. Maloney, however, caused S & M to loan Dowdle the money. Two S & M checks dated September 23, 1947 and October 7, 1947, respectively, each in the amount of $15,000, were drawn on S & M's account with the Mercantile National Bank, Dallas, Texas. They were both payable to the order of John J. Dowdle and the drawer was "S & M Sales Corp. By Edward S. Maloney [signature] President." Dowdle endorsed both checks in blank and both were deposited to the account of the "Retail Liquor Dealers Service Corp." Dowdle made two notes dated September 23, 1947 and October 4, 1947, *211 for $15,000 each, payable to the order of Maloney December 15, 1947. The notes were promtly endorsed by Maloney and turned over to S & M. One of the notes provided for interest at the rate of five per cent per annum; the other was silent as to interest. S & M's accountant recorded the transactions as loans of S & M and the books of S & M showed notes receivable of $30,000 due from Dowdle. S & M, although an accrual basis taxpayer, never accrued any interest receivable on the notes. Neither S & M nor Maloney ever received any part of the principal or interest on these notes. About 1948, Maloney requested an attorney to attempt to enforce collection of the notes for S & M. Maloney learned that Dowdle was in financial difficulties and litigation to enforce collection was never instituted. The respondent determined that the notes receivable from Dowdle belonged to Maloney rather than S & M and that, therefore, Maloney received a dividend from S & M in the amount of $30,000. S & M, rather than Maloney, loaned Dowdle the $30,000 and Dowdle owed the $30,000 to S & M, rather than Maloney. The $30,000 did not represent a dividend to Maloney. Issue 4 - Salaries (a) Dorothy T. Maloney. S & *212 M paid Dorothy $6,000 and $4,500 during the fiscal years ended February 29, 1948 and February 28, 1949, respectively, and it deducted those amounts as salary. The respondent disallowed the entire amounts claimed on the ground that Dorothy performed no services for S & M. Dorothy is a high school graduate. Prior to her marriage in 1931 to Maloney, she had worked in an office at Roosevelt Field doing general office work. After her marriage she worked in a bank for a while. That is the extent of her business experience. Maloney discussed very little business at home. Although Dorothy was secretary and treasurer of S & M, she was not active in the affairs of the corporation. She did not prepare or sign any minutes of any meeting of S & M; she never saw the corporate books of S & M; and S & M never agreed to pay her a salary. Although she received money from S & M from time to time, she did not know for what purpose. She endorsed the checks which she received from S & M but she did not know just what they were for. She did not know why these S & M checks were turned over to her by her husband. After endorsing them, she either deposited them in her account or returned them to Maloney. The *213 only work that Dorothy did for S & M was done at the request of Maloney. She did it as a dutiful wife and without any consideration of the fact that she might have been an employee of S & M. The things done by her consisted of writing a few letters. The amount of work done by her was nominal and not of any consequence. Dorothy rendered no service to S & M. The amounts of $6,000 and $4,500 for the fiscal years ended February 29, 1948 and February 28, 1949, respectively, paid by S & M to Dorothy and claimed by it as salary deductions were not "a reasonable allowance for salaries or other compensation for personal services actually rendered." (b) Accrued but unpaid salary. S & M, on its return for the fiscal year ended February 28, 1949, deducted, inter alia, $5,000 for officers' salaries which had accrued at February 28, 1949, but which were unpaid at that time. This amount represented the following amounts for the following officers: Edward S. Maloney
$3,000
Dorothy T. Maloney
1,500
Harold O. Seymour
500
$5,000
The cash disbursements book of S & M shows that no officers' salaries were paid by S & M within the 2 1/2 month period immediately following February 28, 1949. Respondent disallowed *214 the above-described claimed deduction of $5,000 on the ground that the "$5,000 represents officers' salaries accrued as at the end of the taxable year which was not paid within 2 1/2 months after the close of the taxable year." (c) Payment of salary in property. Respondent increased the income of Maloney for the year ended December 31, 1950, by $3,786.66, which amount the respondent determined represented salary paid to Maloney by S & M. Respondent's determination was based on the respondent's agent's observation of an entry on S & M's books which credited the automobile account (reduced) and debited the salaries payable account (reduced) in the amount of $3,786,66, which purportedly represented the book value of a used Lincoln automobile. Respondent accepted the entry as reflecting what actually occurred and increased Maloney's income by $3,786.66 for 1950, since the entry indicated a distribution of property in payment of salary and since Maloney did not report any salary income from S & M in 1950. Title to the automobile was not transferred by S & M to Maloney. Maloney used the automobile in S & M's business. In 1950, the automobile was wrecked. An insurance company paid $1,700 *215 to S & M to cover the wreckage of the automobile. Maloney did not receive a salary of $3,786.66 in property as determined by respondent. Issue 5 - Miscellaneous Deductions of S & M (a) Interest. Respondent disallowed an interest deduction claimed by S & M for the fiscal year ended February 29, 1948, in the amount of $122.18 on the ground that the claimed item represented penalties for late filing of employment taxes. Petitioner, on brief, concedes the correctness of this adjustment. (b) Professional fees. Respondent disallowed a professional fees deduction claimed by S & M for the fiscal year ended February 29, 1948, in the amount of $400 on the ground that the claimed item represented incorporation fees which should have been capitalized. Petitioner, on brief, concedes the correctness of this adjustment. (c) Bad debts. S & M made an entry on its books at the end of the fiscal year ended February 28, 1949, debiting "Bad Debts" for the amount of $5,083.59, and crediting "Reserve for Bad Debts" for the same amount. The amount of $5,083.59 was arrived at by taking 15 per cent of the accounts receivable shown on the books at February 29, 1948. The accounts receivable per the books at *216 February 29, 1948, were as follows: Executive Transport Corp.
$ 7,751.37
Foley & Co.
26,139.27
Total
$33,890.64
Fowlie, the president of Executive, was accidentally killed in 1948 and Executive apparently was having financial difficulties at that time. Neither of the above-listed accounts receivable was ever collected. The respondent disallowed the claimed amount ($5,083.59) in full and explained the disallowance as follows: "(b) Adjustment to the Reserve for Bad Debts account deemed to be excessive." The amount of $5,083.59 represents a reasonable addition to the reserve of S & M for bad debts. Issue 6 - Rent Respondent increased Maloney's income for the year ended December 31, 1949, by $874.25 on the ground that this amount was received by Maloney from S & M as rents but that it represented a dividend. A portion of the amount that the respondent determined that Maloney received constituted a reimbursement to Maloney of amounts paid on behalf of S & M. The portion that constituted the aforesaid reimbursement was $255.25. Maloney had paid two bills for rent in the respective amounts of $120.52 and $134.73 and in the total amount of $255.25 for warehouse space which was not used by him personally *217 but was used for S & M. Maloney's net income should have been increased by $619 ($874.25 minus $255.25), rather than the $874.25 determined by the respondent. Issue 7 - Unsubstantiated Contributions On the joint return for 1948, the petitioners claimed a deduction for contributions in the amount of $1,140. Included in that amount was a contribution claimed to have been made to "Father Flanagan's Boys' Town" in the amount $150of. The respondent's agent, upon investigation, found that this item was paid by a check of S & M and deducted on S & M's books as a "General Expense." Accordingly, the respondent disallowed contributions to the extent of $150 on the ground of unsubstantiation. Issue 8 - Additions to the Tax (a) Section 293(b). In addition to the other findings relating to this issue in one way or another the following additional findings are made: On April 29, 1955, an indictment was filed in the United States District Court for the Eastern District of New York by the United States of America against Maloney and Dorothy, defendants, under section 145(b). Count one of the indictment charged Maloney with willfully and knowingly attempting to evade and defeat a large part of *218 the income tax due and owing by him to the United States of America for the calendar year 1947 by filing a false and fraudulent income tax return for that year. Count two of the indictment charged Dorothy with willfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by her to the United States of America for the calendar year 1947 by filing a false and fraudulent income tax return for that year. Count three of the indictment charged Maloney and Dorothy with willfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by them to the United States of America for the calendar year 1948 by filing a false and fraudulent joint return for that year. Count four of the indictment charged Maloney and Dorothy, as president and secretary-treasurer, respectively, of S & M with willfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by S & M for its fiscal year ended February 28, 1949, by maintaining and causing to be maintained false corporate books and records based in part on false vouchers submitted by them, by preparing and causing to be prepared and by mailing and causing *219 to be mailed a false and fraudulent corporate income tax return for that fiscal year. On November 22, 1955, the Honorable Leo F. Rayfiel, United States District Judge for the Eastern District of New York, convicted the defendant Maloney upon his plea of guilty of the offense of violating section 145(b) in that he filed a false and fraudulent income tax return for the calendar year 1947, and he filed a fraudulent joint income tax return for the calendar year 1948, and he filed a false corporate tax return for S & M for its fiscal year ended February 28, 1949. Maloney was given a sentence of 18 months on each of counts one, three and four of the indictment to run concurrently. The term of imprisonment as served by Maloney was reduced to about 6 months. One of the reasons that Maloney pleaded guilty was that he thought he could save Dorothy, who was ill at the time, the burden of a trial. The United States attorney prosecuting the case, however, did not dismiss the indictment against Dorothy because Maloney pleaded guilty, but because of a policy of not prosecuting wives where they did not actively participate in the tax evasion scheme. Arthur Miniman, hereinafter referred to as Miniman, *220 a certified public accountant, kept the books of S & M and prepared the returns of S & M for the fiscal years ended February 29, 1948 and February 28, 1949, from the information contained in the books. The entries in the books were based on information submitted by Maloney, checkbooks, deposit slips, etc. Miniman's function was primarily bookkeeping. Miniman also prepared, from information supplied by Maloney, Maloney's 1947 return, Dorothy's 1947 return, and Maloney's and Dorothy's joint return for 1948. Neither Maloney nor Dorothy requested Miniman to make a false return for them. Miniman did not sign the returns which he prepared or indicate on the returns that he had prepared them. A part of the deficiency determined against Maloney for the year 1947 is due to fraud with intent to evade tax. A part of the deficiency determined against Maloney and Dorothy on their joint return for 1948 is due to fraud with intent to evade tax. A part of the deficiencies determined against S & M for the fiscal years ended February 29, 1948 and February 28, 1949, is due to fraud with intent to evade tax. None of the deficiency determined against Dorothy for the year 1947 is due to fraud with intent *221 to evade tax. None of the deficiencies determined against Maloney and Dorothy for the years 1949 and 1950 is due to fraud with intent to evade tax. (b) Sections 294(d)(1)(A) and 294(d)(2). No evidence has been adduced regarding the respondent's determination of additions to the tax under these sections. Issue 9 - Statute of Limitations The following schedule shows the dates when the returns in question were filed and the last date for filing such returns: Date
Last Date
Filed
for Filing
Edward S. Maloney
1947
3/ 9/48
3/15/48
Dorothy T. Maloney
1947
3/ 9/48
3/15/48
Edward S. and Dorothy T. Maloney
1948
3/15/49
3/15/49
Edward S. and Dorothy T. Maloney
1949
3/15/50
3/15/50
Edward S. and Dorothy T. Maloney
1950
3/15/51
3/15/51
S & M
FYE 2/29/48
5/10/48
5/15/48
S & M
FYE 2/89/49
5/13/49
5/15/49
The following waivers extending the period of limitations were executed: Extending
the Period
Taxable
Date of
of Limitations
Year
Waivers
Until
Edward S. and Dorothy T. Maloney
1949
2/27/53
6/30/54
S & M
2/29/48
3/27/51
6/30/52
S & M
2/29/48
5/ 7/52
6/30/53
S & M
2/29/48
2/27/53
6/30/54
S & M
2/28/49
5/ 2/52
6/30/53
S & M
2/28/49
2/27/53
6/30/54 The Commissioner's notices of deficiency in all of the proceedings here involved were mailed on January 26, 1954. *222 Opinion BLACK, Judge: The issues will be discussed in the same order as the Findings of Fact relating to them. Issue 1 - Traveling and Entertainment Expenses Maloney was a pilot. He was employed as chief pilot for Texaco for a number of years. His duties included supervising the purchase of aircraft equipment. In the latter part of 1946, the chairman of the board of Texaco told Maloney that if he could find time from his regular duties he might help Aramco, in which Texaco owned a substantial interest, set up an aviation division. In October 1947, Texaco gave Maloney a leave of absence so that he might devote full time to Aramco. As manager of Aramco's aviation division he was responsible for the purchase of large quantities of aircraft equipment and supplies. On March 13, 1947, unknown to Texaco and Aramco, Maloney caused the incorporation of S & M. Fowlie, the president of Executive which had sold equipment to Texaco, and his attorney, Hutchinson, were the other original incorporators. Shortly thereafter, Fowlie and Hutchinson transferred their shares to Dorothy and Seymour, the chief mechanic of Texaco. The shares of S & M were then held: 50 per cent by Maloney, 25 per cent by *223 Dorothy, and 25 per cent by Seymour. The nature of S & M's business is not entirely clear but it is clear that a substantial portion of its gross income was derived from commissions paid by certain suppliers of goods to Aramco. Maloney and Seymour were discharged from the employ of Texaco on July 1, 1948. In November 1950, Texaco brought suit against Maloney, Dorothy, and Seymour and in November 1953, the defendants filed a stipulation consenting to a judgment which was entered against them in 1954 in the amount of $138,581.97. Aramco also brought suit against Maloney, Dorothy, Seymour, S & M, and others who apparently were sellers of goods to Aramco. Defendants Maloney, Dorothy, and S & M executed a stipulation consenting to judgment from Aramco in the amount of $999,331.69. S & M paid considerable sums of money to Maloney, Dorothy, and Seymour and deducted these amounts as travel and entertainment expenses. Maloney and Dorothy did not return these amounts received as income. The respondent disallowed the deductions in their entirety and added the amounts admittedly received by Maloney and Dorothy to their income. Petitioners contend that the amounts received by them from S & M constituted *224 reimbursement for travel and entertainment expenses incurred by them on behalf of S & M. The payments by S & M were based on vouchers submitted to it in the names of Maloney, Dorothy, and Seymour. Maloney did considerable traveling in connection with his employment by Texaco and Aramco. The vouchers submitted by him to S & M contain numerous duplications of items which he charged to Texaco and Aramco and for which he was reimbursed by them. He also charged plane fares to S & M while he was traveling in Aramco planes. A careful examination of the vouchers in the record shows that the ones submitted to S & M had little basis in fact and cannot be relied upon. Also, petitioner recognized that the vouchers are self-serving and do not constitute the requisite substantiation. A number of bills and receipts were, therefore, submitted at the hearing on behalf of Maloney in an attempt to substantiate his alleged expenses on behalf of S & M. Many of the bills defeat rather than serve that purpose. Some are for unrelated items such as "sealing of integral gas tanks on C-54" and "one number 7645 motor assembly." Many were bills from hotels in foreign countries. The record shows that on the trips *225 abroad Maloney was on Aramco business and that Aramco reimbursed him for his lodging. Some of the bills were not addressed to Maloney and others indicate that Maloney was on Texaco business when the billed expenses were incurred. We have no doubt that Maloney spent a great deal of money during the periods involved. We do not know whether he spent all that S & M paid him under the guise of travel and entertainment; but assuming that he did expend all, the necessary connection between the expenditures and S & M's business has not been shown. Maloney testified that he spent large sums entertaining personnel of an airline company that had handled Aramco's business prior to Maloney's setting up the Aramco airlift to Dahran. It seems clear that these amounts were not expenses of S & M. The substantial amounts expended for liquor and hotel bills by Maloney and Dorothy have not been shown to be expenses of S & M. The mere fact that the amounts were expended does not mean that they are deductible for tax purposes. No evidence was submitted to substantiate the amount paid as travel and entertainment to Seymour and Dorothy. And the testimony in the Texaco and Aramco suits, which (testimony) *226 is before us, satisfies us that those payments should be entirely disallowed to S & M. We do, however, believe that Maloney did expend some amounts on travel and entertainment in connection with S & M's business. We have, therefore, approximated a reasonable amount under the circumstances under the Cohan rule. See Cohan v. Commissioner, (C.A. 2, 1930) 39 Fed. (2d) 540, 544. These approximations are included in our Findings of Fact and should be used in the recomputation under Rule 50. Issue 2 - Purchases from Ann Angell Co.
(a) Purchase of $1,553.54. S & M paid Ann Angell $1,553.54 for carpets ($1,035), draperies ( $450), and a safe, billing machine and stationery ($68.54). S & M capitalized the expenditures on its books and deducted depreciation on that amount in the amounts of $103.57 and $155.35 for the fiscal years 1948 and 1949, respectively. The Commissioner disallowed the depreciation and added $1,553.54 to Maloney's income on the ground that the items purchased were for personal use and that the expenditure represented a dividend to Maloney. Petitioners contend that the items purchased were for the S & M office which Maloney had set up in one room in his personal residence. *227 Respondent contends that the "office" was also a den which could be put to personal use and that the carpets purchased were for use in rooms other than the "office." We are satisfied that the room set aside for an office was used, at least partially, as an office and that at least a portion of the items purchased was used in that room. We are also satisfied that a portion of the expenditures related to Maloney's personal use. In the absence of more specific proof we have found that one-half of the expenditures represented a capital expenditure of S & M. One-half of the depreciation claimed was properly disallowed and Maloney received a dividend of one-half of the amount determined. (b) Purchase of $3,015.75. S & M paid Ann Angell $3,015.75. It treated the expenditure as a purchase of material and deducted that amount as part of cost of goods sold. The respondent disallowed the deduction and increased S & M's income by that amount. He also increased Maloney's income by that amount on the ground that the expenditure was for furniture for Maloney's personal residence. Two bills of Ann Angell Co. are in evidence. The amount of each is $3,015.75 and the dates contained thereon are about *228 a month apart. One is for furniture and the other is for "Rebuilding & Timing Transmitters." The Government's determination is based on the ground that the expenditure in question was for the items contained in the former; the petitioners' claim is based on the contention that the expenditure was for the items contained in the latter. The conflict in the evidence has been resolved by our findings of fact in favor of the respondent's contention. Aside from the fact that the petitioner has not shown by the weight of the evidence that the respondent's determination was incorrect, we think that the reasonable inferences from the record affirmatively support the respondent's determination. The testimony of Goldberg, owner of Ann Angell, regarding the transaction left much to be desired. However, he did testify that he did sell Maloney the furniture for $3,015.75 and that he could not recall the transmitter transaction. Goldberg was in the interior decorating business, including airplane interior decorating, but knew nothing about the rebuilding of transmitters. No reason is apparent why Goldberg would misrepresent his transactions with Maloney to the respondent's agent who secured the bill *229 which was the basis of the respondent's determination. Also, in the Texaco suit Maloney stated that Ann Angell was "an upholstering outfit" and that "I don't think we had any business with him [Ann Angell] other than buying a floor lamp or something like that." On this record, we uphold respondent's determination regarding this item. Issue 3 - Loans to J. J. Dowdle S & M made out two checks, each for $15,000, payable to J. J. Dowdle. Both were duly endorsed by Dowdle. Dowdle, shortly thereafter, prepared and delivered two notes payable to Maloney for $15,000 each. Maloney endorsed the notes in blank. The respondent determined that Maloney received a dividend on the above transaction on the ground that the loan of $30,000 was made by him personally rather than by S & M. We think the record supports a finding that S & M made the loans and that the two notes were the property of S & M. Maloney did not have the funds to make the loans personally. Dowdle made the notes out prior to the time that he delivered them to Maloney. Maloney endorsed the notes in blank at about that time and he testified that they were held by and for S & M. The books of S & M showed the two notes as notes receivable. *230 The attorney who was retained to enforce collection believed that the notes belonged to S & M. Giving regard to all the facts in the record, we think these facts support a finding that the loan was from S & M and that the notes were due to S & M rather than Maloney. Accordingly, we hold for the petitioner on this issue. Issue 4 - Salaries (a) Dorothy T. Maloney. S & M paid Dorothy $6,000 and $4,500 during the fiscal years 1948 and 1949, respectively, and deducted those amounts as salary. The respondent disallowed the entire amounts claimed on the ground that Dorothy performed no services for S & M. Maloney testified that Dorothy performed general office work for S & M and three business letters of S & M written by, or to, her were introduced in evidence. Dorothy did not testify but her testimony in the Texaco and Aramco suits prohibits any finding that she performed any services other than nominal. And it is clear that the nominal services which she did perform were not as an employee but for, and as the wife of, Maloney. We uphold the respondent's determination regarding this issue. (b) Accrued but unpaid salary. S & M deducted on its fiscal year 1949 return $5,000 for office salaries *231 which had accrued at February 28, 1949, but which were unpaid at that time. Respondent disallowed the entire amount on the ground that it was not paid within 2 1/2 months after the close of the fiscal year. Petitioner introduced no evidence on this point and did not argue it on brief. S & M's records show the $5,000 in question consists of $3,000 owed to Maloney, $1,500 to Dorothy, and $500 to Seymour. Its cash disbursements book does not show any payments to officers within the 2 1/2 months immediately succeeding the taxable year. Since Maloney and Dorothy owned 75 per cent of the stock of S & M, we uphold the determination of the respondent as to the amount of $4,500 which was owed to them. Section 24(c) and (b). However, with regard to the $500 owed to Seymour, section 24(c) does not apply since the record shows that Seymour only owned 25 per cent of the S & M stock and does not fall within the proscription of 24(b). We, therefore, uphold the petitioner to the extent of $500. (c) Payment of salary in property. S & M's books in 1950 contained an entry which reflected a distribution of property (a Lincoln automobile) in payment of salary to Maloney. Since Maloney did not report salary *232 income from S & M for 1950, the respondent increased Maloney's 1950 income by the amount recorded as paid on the S & M books. That amount was the book value of the automobile. Respondent accepted the book entry as reflecting what actually occurred. Petitioner contends that the automobile was never converted to Maloney's own use and that when the automobile was subsequently wrecked in 1950, S & M received the insurance proceeds. We think the facts bear out petitioner's contention. Title to the automobile never passed from S & M to Maloney. Maloney used the automobile in S & M's business and when it was wrecked in 1950 an insurance company paid over to S & M $1,700 to cover the wreckage damage. On these facts, we hold for petitioner on this issue and reverse the Commissioner. Issue 5 - Miscellaneous Deductions of S & M (a) Interest and (b) Professional fees. The petitioner on brief has conceded the correctness of these two adjustments; therefore, we uphold the respondent's determinations regarding them. (c) Bad debts. Petitioner added $5,083.59 to its reserve for bad debts at the end of the fiscal year ended February 28, 1949, and claimed a deduction for that amount. Prior to the *233 addition its reserve had no balance. At February 28, 1949, its accounts receivable were $33,890.64, and the addition to the reserve represented 15 per cent of the accounts receivable. Respondent disallowed the entire $5,083.59 on the ground that it was excessive. The $33,890.64 balance in the accounts receivable at February 28, 1949, consisted of $7,751.37 due from Executive and $26,139.27 from Foley & Co. Fowlie, who was president of Executive, was killed in 1948 and Executive apparently was having financial difficulties. Foley & Co. was apparently involved in Maloney's difficulties with Aramco. Neither of the two accounts was ever collected. We think that under the circumstances, and after giving due regard to the fact that Maloney had been discharged by Texaco and that the two debtors were somewhat involved in the Texaco-Aramco trouble, the addition to the reserve of 15 per cent was reasonable and is deductible under section 23(k)(1). Issue 6 - Rent Respondent increased Maloney's income by $874.25 for the year 1949 on the ground that he had received this amount from S & M and that S & M had designated it as "rent" expense. Maloney did not report this amount as income. He does *234 not deny that he received it but contends that it represented a reimbursement for rental expense of S & M which he had personally paid. To substantiate that contention he introduced five bills for rent totaling $555.25, which he contends that he paid on behalf of S & M. We have found as a fact that two of the bills totaling $255.25 were for S & M rental expense and had been paid by Maloney personally. The other three bills contain no indication that they had been paid by Maloney personally and the cash disbursements book of S & M indicates that the amounts thereon had been paid by S & M directly to the lessor. Under these circumstances we hold that $255.25 constituted a reimbursement by S & M to Maloney and that Maloney's net income should have been increased by $619 ($874.25 minus $255.25) rather than the $874.25 determined by the respondent. Issue 7 - Unsubstantiated Contributions The petitioner has introduced no evidence tending to controvert the correctness of this adjustment. S & M's books show that the $150 claimed by the petitioner as "contribution" has been paid and deducted as an expense by S & M. The respondent was, therefore, correct in increasing Maloney's income by $150 *235 for 1948. Issue 8 - Additions to the Tax (a) Section 293(b). The respondent has determined additions to the tax for fraud under section 293(b) for all years against all of the taxpayers involved herein. As a result of our findings and holdings on the other issues there are deficiencies for all years in all of the proceedings. In order to sustain the additions to the tax for fraud the respondent must prove by clear and convincing evidence that some part of each deficiency is due to fraud with intent to evade tax. We think that the respondent has borne his burden in respect to Maloney's separate return for 1947, to the joint return of Maloney and Dorothy for 1948, and to the corporate returns of S & M for the fiscal years 1948 and 1949, but not with respect to the separate return of Dorothy for the year 1947, nor to the joint returns of Maloney and Dorothy for the years 1949 and 1950. Maloney, as an employee of Texaco and Aramco, was responsible for the purchase of large quantities of equipment for them. He organized his own corporation, S & M, which, among other things, received kickbacks from suppliers of Aramco. No contention is made that S & M did not report all of its gross receipts. *236 The contention is made that S & M fraudulently deducted large amounts paid to Maloney, Dorothy, and Seymour and that Maloney and Dorothy did not report these amounts received by them as dividend income. The payments were for the most part labeled by S & M as "Traveling and Entertainment" expenses and petitioners contend that the payments represented reimbursement to the individuals for travel and entertainment expenses incurred by them on S & M's business. We have found that all of these amounts paid by S & M to Seymour and Dorothy and that a large portion of the amounts paid by S & M to Maloney did not constitute deductible expenses of S & M. We have found that the vouchers submitted by Maloney to S & M which were the basis of the payments from S & M to Maloney contained many false entries. And from the nature of these falsifications we can only conclude that they were intentional and fraudulent. These false and fraudulent vouchers were submitted by Maloney to S & M in Maloney's taxable years 1947 and 1948 and in S & M's fiscal years 1948 and 1949. Many facts in the record and, in particular, the $3,015.75 transaction with Ann Angell suggest that Maloney promiscuously used S & M as *237 a vehicle to charge off as business expenses many expenditures which were personal in nature. And the record does not indicate that Maloney was unaware of the tax consequences of his actions. Cf. Bennett E. Meyers, 21 T.C. 331, 348-349 (1953). In addition, there is Maloney's plea of guilty to an indictment charging him with filing a false and fraudulent separate return for 1947, joint return for 1948, and corporate return for S & M for the fiscal year ended February 28, 1949. He was convicted and served 6 months of an 18-month sentence. Maloney, in an attempt to mitigate the effect of his plea of guilty, testified that this plea was made in an attempt to save his wife, who was ill at the time, the burden of a long trial. The indictment against Dorothy was subsequently dismissed. The assistant United States attorney who handled the case testified, however, that the charges against Dorothy were dismissed, not because Maloney pleaded guilty, but because of a policy of not prosecuting wives where they were not actively participating in the tax evasion scheme. If the plea of guilty was the only evidence in the record relating to fraud, we would be reluctant under the circumstances to *238 hold that the respondent has met his burden. However, when considered in light of the entire record, particularly the travel expense vouchers, we think that the returns of S & M for the fiscal years 1948 and 1949, Maloney's 1947 return, and Maloney's and Dorothy's joint 1948 return were false and fraudulently filed with intent to evade tax. We cannot, however, on the record find that Dorothy filed a false and fraudulent return with intent to evade the tax for 1947. She took no active part in the affairs of S & M. Whatever she did was at the direction of her husband. She did not know the reason that she received the S & M checks. She endorsed them and returned them to her husband or deposited them in the bank. The record does not indicate that Dorothy prepared any false vouchers which were submitted to S & M. Her return was prepared by others and she merely signed without knowledge of the falsity of any items thereon. "The necessary affirmative evidence of intent to evade tax is lacking as to" her. United Dressed Beef Co., 23 T.C. 879, 887 (1955), appeal dismissed (C.A. 9, 1957). Also, the "intent to evade tax" has not been shown in regard to the joint returns for 1949 and 1950. The *239 understatements of income determined by the Commissioner for those years are small. Our findings have not fully sustained the Commissioner's determinations. No false vouchers appear for those years. There were no criminal convictions for those years. The deficiencies which were sustained are primarily based on the presumption of correctness attaching to the respondent's determinations. That is not sufficient to sustain a fraud charge. (b) Section 294(d)(1)(A) and (d)(2). The petitioners have presented no evidence regarding these issues. The respondent's determinations are therefore upheld, subject however to recomputation under Rule 50. Issue 9 - Statute of Limitations Dorothy's 1947 return was filed March 9, 1948; the due date was March 15, 1948. The 3-year period of limitations under section 275(a) expired March 15, 1951, and the 5-year period of limitations under section 275(c) expired on March 15, 1953. Since we have found that Dorothy's 1947 separate return was not fraudulent with intent to evade tax, see Issue 8(a), supra, the Commissioner's notice of deficiency dated January 26, 1954, was out of time. The proceeding against Dorothy for 1947 is, therefore, barred. We have found *240 fraud with respect to the S & M returns for the fiscal years 1948 and 1949, Maloney's 1947 return, and the joint return of Maloney and Dorothy for 1948. The Commissioner's notices of deficiency dated January 26, 1954, were therefore timely. See section 276(a). Although we have not found fraud with respect to the 1949 and 1950 joint returns of Maloney and Dorothy, the proceedings for those years are timely under section 275(a) since a waiver (Form 872) for 1949 was timely filed extending the period until June 30, 1954, and since the 3-year period for 1950 did not expire until March 15, 1954. Decisions will be entered under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: Dorothy T. Maloney, Docket No. 52590; Edward S. Maloney and Dorothy T. Maloney, Docket No. 52591; and S & M Sales Corporation, Docket No. 52592.↩
2. All section references are to the Internal Revenue Code of 1939, as amended.↩
*. Dorothy's corresponding reported "salary" was deducted by the Commissioner in computing net income.
*. Dorothy's corresponding reported "salary" was deducted by the Commissioner in computing net income.↩
3. S & M is not involved herein for periods subsequent to February 28, 1949.↩