E. C. Dodd and Edith Dodd v. Commissioner. E. C. Dodd v. Commissioner.
Dodd v. Commissioner
Docket Nos. 44128, 44129.
United States Tax Court
T.C. Memo 1962-235; 1962 Tax Ct. Memo LEXIS 71; 21 T.C.M. (CCH) 1261; T.C.M. (RIA) 62235; October 5, 1962
*71 During the years 1942 to 1949, inclusive, while manager of a branch bank in Chattanooga, E. C. Dodd conducted, as a separate operation, a business of making cash loans out of private funds placed at his disposal for that purpose. Some of the profits of this business were retained by Dodd and deposited to his personal bank account or otherwise used by him for his own purposes. He was entitled to remuneration for his services and expected to be paid therefor. None of the amounts so retained or used were reported by petitioner E. C. Dodd on his individual income tax returns for the years 1942 to 1947, inclusive, or by petitioners on their joint returns for 1948 and 1949. Certain other items were omitted from income in the years 1946 and 1948. Amended returns reflecting the understatements were filed for all of the years in issue. Held: (1) Petitioners are liable for the additions to tax imposed by section 293(b), I.R.C. of 1939, for each of the years 1942 to 1949, inclusive. (2) None of the years 1942 to 1949, inclusive, is barred by the statute of limitations. Section 276(a), I.R.C. of 1939. William L. Taylor, Jr., Esq., for the petitioners. George W. Calvert, Esq., for the respondent. *72 BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in income tax for the year 1942 and additions to tax for each of the years 1942 to 1949, inclusive, as follows: Addition to Tax
Docket
Defi-
Sec. 293(b),
No.
Year
ciency
I.R.C. 1939
44128
1948
$2,038.42
1949
1,004.71
44129
1942
$152.36
76.18
1943
817.63
1944
1,672.57
1945
1,194.87
1946
3,149.76
1947
1,111.33 Amended returns were filed by petitioners for the years 1942 to 1949, inclusive, on September 18, 1951. The deficiencies in taxes disclosed thereby for the years 1943 to 1949, inclusive, were assessed by respondent on October 4, 1951. In the statutory notices mailed to petitioners on June 17, 1952, on which the present actions are based, the Commissioner determined a deficiency in income tax for the year 1942 only and additions to tax for the years 1942 to 1949, inclusive, in the amounts shown above. The amount of the deficiency for the year 1942 is not contested by petitioner, and the only questions presented for our determination are whether petitioners are liable for additions to tax for each of the years 1942 to 1949, inclusive, under section 293(b), Internal Revenue Code of 1939, and whether any of the years *73 1942 to 1949, inclusive, are barred by the statute of limitations. Findings of Fact The parties have stipulated certain facts. The stipulation and exhibits are incorporated by this reference. E. C. Dodd and Edith Dodd are husband and wife. During the years involved they resided in Chattanooga, Tennessee. E. C. Dodd was born October 21, 1902. For the taxable years 1942 to 1947, inclusive, E. C. Dodd timely filed Federal income tax returns with the collector of internal revenue for the district of Tennessee. For the taxable years 1948 and 1949, E. C. Dodd (hereinafter sometimes referred to as Dodd or the petitioner) and Edith Dodd timely filed joint Federal income tax returns with the collector of internal revenue for the district of Tennessee. During the years 1942 through 1949, Dodd was employed by the Hamilton National Bank, Chattanooga,Tennessee. He was an assistant cashier of the bank and was active manager in charge of the East Chattanooga branch of the bank. In 1949 he had been in the banking business for about 29 years and had been manager of the East Chattanooga branch for about 15 years. He entered the banking business in about 1919 or 1920 and held various positions. He learned *74 the banking business through working in banks, contact with other bankers, and courses under the American Institute of Banking. The latter included courses in negotiable instruments and commercial law. As a branch manager he was in charge of its bookkeeping activities. During the years 1942 to 1949, inclusive, in addition to his duties as an official of the Hamilton National Bank, Dodd carried on additional activities in his individual capacity. These activities consisted of making loans, collecting interest from loans and savings accounts, placing insurance on mortgaged property, and acting as agent in the collection of notes. Dodd carried on the "sideline" loan business during his normal working hours at the bank and without the knowledge or permission of the other bank officials. In carrying on the "sideline" loan business, he was authorized by certain depositors at the bank to withdraw money from certain of their accounts for the purpose of making loans. Dodd assisted these depositors in opening the accounts, preparing the signature cards, and other related matters. In order to make the loans, Dodd secured money from the accounts either by writing a check which he signed, or by *75 having the depositor sign a check in blank. Dodd used his position at the bank to cash such checks. The loans were made in cash. Dodd made real estate loans, as well as loans secured only by promissory notes. He drew all of the loan documents necessary on the "sideline" loans handled by him. If a mortgage was required, he saw that one was executed. He made collections of interest and principal due on the loans. As payments were made, he entered credit therefor on the back of the note. Dodd was entitled to remuneration from the depositors for whom he made loans. During each of the years 1942 through 1949, he received the interest and commissions earned on the loans that he handled. Some of these profits were deposited by Dodd to his personal bank accounts or otherwise used to cover personal living expenses. During the years 1942 to 1949, inclusive, he did not report on his income tax returns any of the amounts so deposited or used by him. The following schedule shows specific items of income which were omitted from the original income tax returns of E. C. Dodd for the years 1942 to 1947, inclusive, and from the original joint income tax returns of E. C. and Edith Dodd for the years *76 1948 and 1949: Income Received
From "Side-
Gain on
Dividends
line" Loan
Sale of
and In-
Year
Activity
House
terest
1942
$ 821.69 *
1943
5,839.80 *
1944
10,289.23 *
1945
7,662.02
$16.85
1946
15,674.25
$349.29
210.79 **
1947
7,617.87
1948
$17,074.00
$400.85
1949
13,546.17
$35.56 Sometime between April 15 and April 30, 1949, a revenue agent, who was investigating another taxpayer, contacted Dodd at the latter's office. The agent was attempting to verify a deduction the other taxpayer had taken on his tax return for interest claimed to have been paid on a loan from the bank. On June 24, 1949, Joe Roddy, acting as attorney for petitioners, contacted agents of the Internal Revenue Service at their offices in Chattanooga and told them that Dodd had failed to report all of his income from interest and commissions and possibly some capital gains for the years 1942 to 1949, inclusive. The attorney also stated that amended returns would be filed for those years. Sometime after the June 24 meeting, Dodd's attorney gave the revenue agent workpapers showing a recomputation of income for the years 1942 to 1949, inclusive. Dodd had furnished the information from *77 which the workpapers were prepared. Corrected income for these years was computed by a bank-deposit-and-cash-expenditures method. Among the workpapers were some personal checks belonging to Dodd and bank ledger sheets on Dodd's personal checking account to which deposits had been made. After the revenue agent had checked the workpapers and made minor corrections, the petitioners agreed to the changes and filed amended returns for each of the years 1942 to 1949, inclusive, reflecting additional income and incorporating the changes made by the revenue agent. Amended returns for the years 1942, 1943, 1944, 1945, 1946, and 1947 were filed by E. C. Dodd with the collector of internal revenue for the district of Tennessee on September 18, 1951. Amended returns for the years 1948 and 1949 were filed by E. C. Dodd and Edith Dodd with the collector of internal revenue for the district of Tennessee on September 18, 1951. The correct taxable net income and the correct income tax liability of E. C. Dodd for the years 1942 to 1947, inclusive, and of E. C. and Edith Dodd for the years 1948 and 1949 is as follows: Docket
Income Tax
No.
Taxpayer
Year
Net Income
Liability
44129
E. C. Dodd
1942
$ 3,372.38
$ 327.06
1943
8,976.96 *
1,998.12 **
1944
13,381.22
3,741.30
1945
11,518.87
2,977.74
1946
22,156.67
7,221.37
1947
12,700.98
2,941.55
44128
E. C. and Edith Dodd
1948
22,282.27
4,767.66
1949
12,295.72
2,009.42
*78 E. C. Dodd understated his net income on his original Federal income tax returns for the years 1942 to 1947, inclusive, in amounts as follows: Net Income
Correct Net
Net Income
Year
Reported
Income
Omitted
1942
$2,550.69
$ 3,372.38
$ 821.69
1943
3,137.16 *
8,976.96 *
5,839.80
3,425.00 **
9,264.80 **
5,839.80
1944
3,091.99
13,381.22
10,289.23
1945
4,340.00
11,518.87
7,178.87
1946
6,001.45
22,156.67
16,155.22
1947
5,121.49
12,700.98
7,579.49
E. C. and Edith Dodd understated their net income on their original Federal income tax returns for the years 1948 and 1949 in amounts as follows: Net Income
Correct Net
Net Income
Year
Reported
Income
Omitted
1948
$6,038.56
$22,282.27
$16,243.71
1949
(1,686.01)
12,295.72
13,981.73
The majority of the income omitted from the returns of E. C. Dodd for the years 1942 to 1947, inclusive, and of E. C. and Edith Dodd for the years 1948 and 1949 was derived from Dodd's "sideline" loan activities. Portions of the omissions *79 in 1946 and 1948 were due to failure to report gains on sales of real property and understatement of the gain on a reported sale. The additional Federal income taxes due from E. C. Dodd for the years 1943 to 1947, inclusive, and from E. C. and Edith Dodd for the years 1948 and 1949, reported on the amended returns filed for these years, were assessed by the respondent on October 4, 1951. Prior to assessment of the additional Federal income taxes disclosed by the amended returns for the years 1943 to 1949, inclusive, there were deficiencies in income tax due from E. C. Dodd and E. C. and Edith Dodd for the years 1942 to 1949, inclusive, in amounts as follows: Deficiency in
Taxpayer
Year
Income Tax
E. C. Dodd
1942
$ 152.36
1943
1,635.25
1944
3,345.14
1945
2,389.74
1946
6,299.51
1947
2,222.66
E. C. and Edith Dodd
1948
4,076.84
1949
2,009.42
Because of the assessments made by the respondent on October 4, 1951, there were no deficiencies in income tax asserted in the statutory notices of deficiency mailed to the petitioners on June 17, 1952, for the years 1943 to 1949, inclusive. At least a part of the deficiency for each of the taxable years involved was due to fraud with intent to evade tax. Petitioner E. *80 C. Dodd filed a false or fraudulent return with intent to evade tax for each of the years 1942 to 1947, inclusive. The petitioners filed a false or fraudulent return with intent to evade tax for each of the years 1948 and 1949. Opinion During the years 1942 to 1949, inclusive, while petitioner was manager of a branch bank in Chattanooga, Tennessee, he conducted, as a separate operation, a business of making cash loans out of private funds placed at his disposal for that purpose. Some of the profits of this business were retained by petitioner either by placing such money in his personal account at the bank or by paying for personal expenditures out of the cash received. None of the amounts so retained or used by petitioner were reported by him on his income tax returns. In 1951, after being contacted by a revenue agent who was attempting to verify an interest deduction claimed by another taxpayer, petitioner had amended returns prepared for himself on the bank-deposit-and-cash-expenditures method for all of the years in issue. These returns reflected additional income to petitioner in the amounts of loan profits retained or used by him, plus gains on certain other transactions not *81 previously reported or previously reported only in part. For the years 1943 to 1949, inclusive, respondent assessed deficiencies in tax in the amounts reflected by the amended returns. By subsequent notices of deficiency, respondent determined a deficiency in the amount disclosed by the amended return for 1942, and determined additions to tax for each of the years 1942 to 1949, inclusive, on the ground that at least a part of the deficiency for each year was due to fraud with intent to evade tax. It is well established that the filing of amended returns and payment of the taxes reflected thereby does not bar the respondent from thereafter assessing additions to tax for fraud under section 293(b) of the Internal Revenue Code of 1939. George M. Still, Inc., 19 T.C. 1072, affd. per curiam 218 F. 2d 639; Herbert Eck, 16 T.C. 511, affd. per curiam 202 F. 2d 750, certiorari denied 346 U.S. 822. Such additions to tax are to be computed on the basis of the "deficiency," which, insofar as here pertinent, is the difference between the correct tax liability and the amount shown on the original return. Section 271(a), Internal Revenue Code of 1939; Maitland A. Wilson, 7 T.C. 395. There *82 is no controversy as to the amount of the deficiency in each of the years before us. There remains the question whether any part of the deficiency in each of the years before us was due to fraud with intent to evade tax within the meaning of section 293(b), Internal Revenue Code of 1939. Respondent bears the burden of proving fraud by clear and convincing evidence. Kurnick v. Commissioner, 232 F. 2d 678 (C.A. 6, 1956), affirming a Memorandum Opinion of this Court; Arlette Coat Co., 14 T.C. 751. We are satisfied that respondent has met this burden. A finding of fraud depends upon the import of the whole record as it reflects the petitioner's entire course of conduct. Luerana Pigman, 31 T.C. 356. Such a finding is supported by evidence which demonstrates a gross understatement of income by an intelligent taxpayer. Rogers v. Commissioner, 111 F. 2d 987 (C.A. 6, 1940), affirming, 38 B.T.A. 16; Arlette Coat Co., supra, especially where such understatement occurs in each of a number of consecutive years. Holland v. United States, 348 U.S. 121; Rogers v. Commissioner, supra; Shaw v. Commissioner, 252 F. 2d 681 (C.A. 6, 1958), affirming, 27 T.C. 561. The facts show that petitioner *83 carried on a loan business separate from his activities as an officer of the bank; that he was entitled to remuneration for his services in connection with this business; and that he expected to receive pay therefor. While there has been no showing of the specific terms of petitioner's right to reimbursement from the persons whose money he handled (indeed, petitioner has claimed there were, with one exception, no terms agreed upon), petitioner's amended returns constitute admissions of additional income from the loan business in the years before us. Thus, we need not determine whether petitioner was an agent of the persons for whom he lent money, or, indeed, whether he was entitled to all of the income he received or whether he held such income under a claim of right. It is sufficient that at least a part of the money retained or used by petitioner in each year rightfully belonged to petitioner and was his by reason of services rendered. It is undisputed that none of the money so retained or used was reported as income by petitioner in any year. In addition, petitioner failed to report gains from the sale of houses in 1946 and 1948, and understated the gain on the sale of a house in *84 1946. These facts constitute strong evidence of an intent to evade taxes. When they are viewed in connection with the following additional circumstances, the conclusion that a fraudulent intent existed is compelling. Unreported income exceeded reported income by a substantial amount in every year except 1942. Petitioner was an experienced and apparently able businessman. He had been in banking for almost 30 years. His position as a branch manager for about 15 years placed him in daily contact with all sorts of financial transactions and their implications. For all of these reasons, we think it clear that at least a part of the deficiency for each of the years 1942 to 1949, inclusive, was due to fraud with intent to evade tax. Although the question of limitations was not discussed by petitioners in their briefs, we think it necessarily follows from what we have said above that each of the original returns filed by petitioner for the years involved was false or fraudulent with intent to evade tax, and, accordingly, that none of such years is barred by the statute of limitations. Section 276(a), Internal Revenue Code of 1939. Decisions will be entered for the respondent. Footnotes
*. Total understatement of net income. ↩
**. Understatement of gain on sale.↩
*. Victory tax net income is $9,264.80. ↩
**. Income and Victory tax liability. Computation is without considering forgiveness feature of section 6 of the Current Tax Payment Act of 1943, since the addition to tax for fraud applies to 1942.↩
*. Income tax net income. ↩
**. Victory tax net income.↩