HERBERT ECK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARTIN M. KARLAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

COSIMO PERRUCCI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 22612, 22613, 22614. Promulgated February 28, 1951.

*Paul Arnold, Esq.,* for the petitioners.
*Scott A. Dahlquist, Esq.,* for the respondent.

MURDOCK, *Judge:* The partnership income for each of the 3 years was understated on the original returns by amounts varying from $60,000 to $68,000. Those understatements were carried into the returns filed by the three partners. The partnership books were falsified in an effort to conceal the true amount of income earned in each year. Sales in substantial amounts in each year were not reported and purchases were overstated in substantial amounts for each year. The falsification of the accounts was with the knowledge of and, in many instances, at the direction of Karlan. The false and fraudulent accounting for the partnership business and the false and fraudulent reporting of the partnership income on the returns was all part of a scheme suggested to the partners by Milton Trager, a certified public accountant. He also prepared most of the returns. The purpose of the scheme was to evade taxes.

Trager had been employed by a predecessor of the partnership. Eck was instrumental in retaining his services so that he could look after Eck's interest in the Rae Metal Products Company. The partners, at Trager's direction, withdrew partnership earnings in large equal amounts on checks taken from the back of the partnership check book out of chronological order and without any entries on the checks or stubs to show what they were for. The partners received those amounts and used them for their own purposes. The books of the partnership did not account for the withdrawals. The books contained many false entries. Later, futile attempts, including the raising of checks, were made to "reconcile" the accounts. Finally, when it appeared that the plan might get the partners into trouble, they hired a new accountant and upon his advice filed the amended returns.

Karlan was directly responsible for a number of the false entries in the books. He well knew Trager's scheme was dishonest, the partnership income was far greater than was reported in the original partnership returns, and his own income was much larger than he reported in any of his original returns. He deliberately filed a false return for each year. It is clear beyond a reasonable doubt that a part of a deficiency against him for each year was due to fraud with intent to evade tax.

The evidence indicates that Eck and Perrucci had little, if anything, to do with the entries made in the books, and it is argued that all of the falsifications and fraud went on without their knowledge so that they were victims of the machinations of others. However, it is inconceivable that Eck could have carried on the important part of the business entrusted to him without being sufficiently familiar with that business to know that his share of the income for each year

was far in excess of what he was reporting. He participated in Trager's scheme, at least to the extent of signing checks for the withdrawal of and receiving large amounts of income of the partnership which he did not report. The Court, after observing him, listening to his testimony and studying it in the light of the entire record, is satisfied that he was aware of what was going on and deliberately filed false and fraudulent returns with intent to evade tax. The record justifies the finding made that a part of a deficiency against him for each of the 3 years was due to fraud with intent to evade tax.

Cosimo Perrucci likewise participated in the scheme, at least to the extent of signing checks and receiving large amounts of income of the partnership which he did not report. He had not had much formal education but he was not stupid. The Court, after observing him, listening to his testimony in the light of all other evidence in the record, is unable to believe that he was so dense that he did not appreciate what was going on. The evidence indicates, on the contrary, that he too knew that his income for each year from the partnership, which he was required to report for Federal income tax purposes, was far in excess of the amount which he actually reported and justifies the finding that a part of a deficiency against him for each year was due to fraud with intent to evade tax.

The relief granted in the Current Tax Payment Act of 1943 does not extend to a taxpayer to whom additions to the tax for the taxable year are applicable by reason of fraud. See section 6, Current Tax Payment Act of 1943. It follows that the Commissioner did not err in determining deficiencies and penalties for 1942. Otherwise, the petitioners do not contest the deficiencies.

A jurisdictional question arises in each of these cases of which the Eck case will serve as an example. The question is whether the Tax Court has any jurisdiction based upon a statutory notice in which the Commissioner does not determine a deficiency in tax for 1943 but merely gives notice to the taxpayer of his determination that the latter is liable for the 50 per cent addition to the deficiency by reason of the application of section 293 (b). Eck filed an original return for 1943 showing tax due in the amount of $3,467.89. A tax of $15,907.91 was imposed on his income for that year by Chapter 1 with the result that a $12,440.02 deficiency, as defined in section 271 (a) of the Internal Revenue Code, existed after the filing of that return. Eck later filed an amended return showing additional tax due in the amount of $14,587.32. He paid that amount which was $2,147.30 in excess of the deficiency. The Commissioner, in the notice upon which the present proceeding is based, determined for 1943 an overassessment of $2,147.30 and a penalty under section 293 (b) in the amount of $6,220.01, or 50 per cent of the deficiency mentioned above. Section 293 provides that if any part "of any deficiency" is due to fraud, then

50 per cent of the total deficiency is to be assessed and collected. There was a deficiency against Eck for 1943 in the total amount of $12,440.02 to which section 293 (b) applies, and the Commissioner had a right to determine that penalty even though the deficiency was later collected through a voluntary payment so that when the Commissioner sent out his notice of deficiency he did not determine any deficiency. *J. S. McDonnell*, 6 B. T. A. 685; *Maitland A. Wilson*, 7 T. C. 395; *Aaron Hirschman*, 12 T. C. 1223, appeal dismissed CA–2, January 10, 1950; *Harry Sherin*, 13 T. C. 221. Section 293 (b) provides that "50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected and paid * * *." "So" must refer to the words in the preceding paragraph, section 293 (a), "in the same manner as if it were a deficiency." *Gutterman Strauss Co.*, 1 B. T. A. 243. Section 293 (b) is then to be read as providing that the 50 per cent addition to the deficiency shall be assessed, collected and paid in the same manner as if it were a deficiency. A deficiency is assessed, collected and paid only after the Commissioner has made a determination and sent a notice of that determination in accordance with section 272 which provides for the jurisdiction of this Court after the mailing of the notice of deficiency. Thus, the Commissioner, in sending out the notice determining that Eck was liable for the addition to the tax provided by section 293, was complying with the law which required him to proceed in the same manner as if it were a deficiency. The statute was intended to mean also that where such a notice was sent, the Tax Court has jurisdiction. A similar holding was made without discussion in *Harry Sherin*, *supra*, as to a penalty under section 293 (b) against Joseph Berger for the year 1941.

*Decisions will be entered for the respondent.*