GEORGE M. STILL, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 25744.   Promulgated March 12, 1953.

*George R. Sherriff, Esq.*, for the petitioner.
*Joseph F. Lawless, Jr., Esq.*, for the respondent.

### OPINION.

RAUM, *Judge:* The respondent determined a deficiency in tax and
50 per cent additions to tax for fraud, for the fiscal year ended July 31,
1945, as follows:

| Kind of tax | Deficiency | Additions to tax |
|---|---|---|
| Declared value excess-profits | None | $1,251.78 |
| Excess profits | $222.21 | 12,020.56 |

All of the facts have been stipulated, and the stipulation is adopted
as our findings of fact.

The petitioner, a wholesale dealer in oysters and clams, is a New
York corporation organized in 1905.   Its president, Sidney A. Still
(now deceased), owned 50 per cent of its capital stock.   His daughter,
Nancy S. Milliken, was vice president and owned 10 per cent of its
stock.   Michael Weissman, secretary of the corporation, also owned
10 per cent of its stock.   The remaining stock was owned by mem-
bers of the Still family inactive in the management of the corporation.

Petitioner filed timely corporation income and declared value ex-
cess-profits, and excess profits tax returns for its fiscal year ended
July 31, 1945, on the accrual basis, with the collector of internal reve-
nue for the second district of New York on October 15, 1945.   Peti-
tioner failed to report in these returns cash sales of $30,015.64 made
during that year.   It reported therein that no declared value excess-

profits tax was owed and that the amount of its excess profits tax was $2,760.89.

On October 17, 1946, the petitioner filed amended returns for its fiscal year ended July 31, 1945, on the accrual basis, with the collector of internal revenue for the second district of New York. These amended returns disclosed additional sales in the aggregate amount of $30,015.64. In the amended returns the petitioner reported its liability for declared value excess-profits tax to be $2,503.55, and for excess profits tax $26,579.80 (which was $23,818.91 in excess of that reported in the original excess profits tax return). The petitioner then paid $2,503.55 declared value excess-profits tax and $23,818.91 additional excess profits tax.

The $30,015.64 sales which petitioner failed to report in its original returns were not recorded on its corporate books. They were cash sales which petitioner made to Shine's Restaurant and to Charles' Restaurant. During the period commencing in October 1944 and continuing until June or July 1945, Nancy Milliken and Michael Weissman made unauthorized withdrawals and retained for themselves the proceeds of these sales. They had been employed by petitioner for approximately 25 years.

During the fiscal year ended July 31, 1945, the petitioner paid Nancy compensation of $1,800 per annum for her services as vice president, and paid Michael $5,940 for his services as secretary. In affidavits filed with this Court they stated that in the fall of 1944, they discussed their low salaries and the probability that they could obtain no increases "because of the limitation on increases by law those days" and decided they would take for themselves certain monies representing cash sales by petitioner to Shine's Restaurant and Charles' Restaurant and would not enter these sales in the day book used for posting to the regular set of books. They continued this practice until June or July 1945.

In June or July 1945, Sidney Still, petitioner's president, learned that Nancy and Michael were wrongfully withdrawing and retaining for their own use the proceeds of these sales, whereupon the practice ceased and Nancy and Michael promised to return to the corporation the unauthorized withdrawals.

Sidney, Nancy, and Michael, the responsible officers of petitioner, all knew of petitioner's unreported sales in the sum of $30,015.64, at least a full 2½ months prior to the filing of the corporation's original tax returns for the fiscal year ended July 31, 1945.

The original returns of petitioner for the fiscal year ended July 31, 1945, were prepared by William J. Umbach of the firm of Bergen and Willvonseder, certified public accountants, from the books and records of petitioner. At the time of their preparation Umbach told Michael

that the gross profit reported on the returns did not look right to him. Michael then stated that it had become necessary for the corporation to make cash purchases at high prices to fill its needs and that it was selling this merchandise at the same prices, without profit, to regular customers.

In December 1945, Charles F. Evans, attorney for petitioner, conferred with George L. Bergen of the firm of Bergen and Willvonseder and told him that he had just learned that some sales had not been reported in the return of petitioner for 1945, and asked for Bergen's opinion as to what should be done. Upon being advised that the omitted income covered sales to two customers who always paid in cash, Bergen told Evans, and the latter agreed, that an amended return should be prepared and filed and any additional taxes paid as promptly as possible. The officers of petitioner were informed of their decision. However, no such returns were filed at that time.

In August 1946 Bergen and Willvonseder were advised by petitioner that internal revenue agents wanted to examine its return for the fiscal year ended July 31, 1944. Umbach, who had also prepared the petitioner's returns for that year, was directed to assist revenue agent Elmer Baumgarten who visited petitioner's office at that time to make a field audit. Umbach spent several days with Baumgarten and then learned that the officers of petitioner were under the impression that his firm would prepare the returns of petitioner for the fiscal year ended July 31, 1946. He reported this to Bergen, and a letter was written to petitioner by the accounting firm in which petitioner was advised that the firm would not prepare the returns for the current fiscal year because petitioner had not followed its advice in connection with the filing of an amended return for the previous fiscal year.

In September 1946, Bergen and Willvonseder prepared amended returns for the fiscal year ended July 31, 1945, in which the sales which had been omitted from the original returns were included in income. Subsequent to the filing of these returns in October 1946, revenue agent Baumgarten revisited the office of petitioner to make a field audit of its returns for the fiscal year ended July 31, 1945. He was informed that amended returns had been filed for that year. When he questioned Nancy and Michael about the omission of the cash sales from the original returns, they told him that these sales were not reported because they believed that monies from these cash sales would be necessary for future black market purchases and they accordingly set such funds aside and these sales were not reflected on petitioner's books.

The unauthorized withdrawals by Nancy and Michael were not covered by insurance, and, although they were not repaid during the

fiscal year ended July 31, 1945, they were in fact restored to petitioner in October 1946 by Nancy and Michael.

On July 2, 1948, the petitioner filed with the collector of internal revenue for the second district of New York a claim for refund of declared value excess-profits tax of $2,503.55 and excess profits tax of $23,818.91. This claim was signed by Nancy S. Milliken, as vice president of petitioner.

1. There is no dispute between the parties that sales in the amount of $30,015.64 were improperly omitted from petitioner's original returns for the fiscal year ended July 31, 1945. However, petitioner contends that no deficiency resulted because it was entitled to a deduction in the same amount by reason of loss from theft or embezzlement, and that it accordingly overpaid its taxes in connection with the amended returns. It claims the deduction under section 23 (f) of the Internal Revenue Code, which allows a deduction to corporations for "losses sustained during the taxable year and not compensated for by insurance or otherwise."

We think that petitioner sustained no such deductible loss in the year ended July 31, 1945. When their wrongdoing was discovered during the taxable year, Nancy and Michael promised to make restitution. This is a promise that may not lightly be ignored. No criminal charge appears to have been lodged against either of them. Neither was discharged or suspended; both continued to serve as officers of petitioner; and both did in fact make repayment in October 1946. In these circumstances, it seems clear to us that the unauthorized withdrawals did not constitute "losses" which were "not compensated for by insurance *or otherwise.*" (Italics supplied.)

The petitioner relies upon various cases such as *First National Bank of Sharon* v. *Heiner*, 66 F. 2d 925 (C. A. 3) ; *Peterson Linotyping Co.*, 10 B. T. A. 542; *Piggly Wiggly Corporation*, 28 B. T. A. 412; *Gottlieb Realty Co.*, 28 B. T. A. 418; *Alabama Mineral Land Co.*, 28 B. T. A. 586; *Grenada Bank*, 32 B. T. A. 1290; and *Summerill Tubing Co.*, 36 B. T. A. 347, all of which applied the general rule that losses from embezzlement are deductible in the year in which property is wrongfully taken. But cf. *Alison* v. *United States*, 344 U. S. 167. None of these cases involved circumstances indicating the likelihood that the victimized taxpayer would obtain restitution from the wrongdoer, and, of course, a mere hope of recovery is not sufficient to deprive a taxpayer of his deduction. Cf. *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398. In at least one of the cited cases the absence of any promise of repayment by the embezzler was specifically noted. *Summerill Tubing Co.*, 36 B. T. A. at p. 352.

In *Charles D. Whitney*, 13 T. C. 897, this Court said (p. 901) :

Losses, to be deductible under the revenue laws, must be actual, realized losses, and in any case where there is a reasonable ground for reimbursement

the taxpayer must seek his redress and may not secure a loss deduction until he establishes that no recovery may be had. "It is a startling proposition that a taxpayer may, for reasons of his own, decline to enforce a valid claim against a responsible concern and then assert that he has sustained a business loss which the Government should share." *Lee Merchantile Co.* v. *Commissioner,* 79 Fed. (2d) 391. It is true one does not have to be an incorrigible optimist, and, if there is no reasonable ground to expect reimbursement, the loss is allowable, although perchance recovery may be had in a later year. * * *

The petitioner had the burden of proving that it sustained an actual loss from embezzlement in its fiscal year ended July 31, 1945. It did not satisfy this burden merely by showing that two of its officers and stockholders made unauthorized withdrawals of its funds and did not make restitution prior to the end of the year. It had to establish that it did not then have reasonable grounds for believing that it would receive reimbursement, by insurance or otherwise. Here the two officers and stockholders of petitioner who had withheld the funds in question promised to make restitution when their wrongful conduct was discovered during the taxable year. Cf. *Douglas County Light & Water Co.* v. *Commissioner,* 43 F. 2d 904 (C. A. 9). Such a promise in the circumstances of this case is entirely different from the obligation to repay which arises by operation of law against an embezzler and which is not likely to carry with it any real expectation of being discharged.

The obligation thus explicitly undertaken by the two officers in this case gave petitioner a basis for a reasonable conclusion that it would obtain reimbursement. Certainly, it has not been shown otherwise, and the facts affirmatively disclosed in the record plainly suggest that petitioner could reasonably have expected reimbursement. One of the officers was the daughter of the dominant stockholder, and it seems unlikely that she would have become a defaulting fugitive. Both officers continued in petitioner's employ (indeed, both of them verified the original petition filed with this Court), and the subsequent actual repayment of the amounts involved by them confirms the conclusion that no deductible loss had been sustained. Petitioner has not met its burden of proof in this regard. The return originally filed understated petitioner's income in the amount of $30,015.64, and it is not entitled to any deduction that would neutralize its failure to report that amount as income.

2. The petitioner makes the alternative contention that there is no deficiency upon which an addition to tax for fraud can be based because the additional tax was paid and assessed prior to the mailing of the deficiency notice. This contention is not novel. It has been made by other taxpayers who, after filing returns in which items of income were fraudulently omitted, filed amended returns in which the omitted items were included, and paid the additional tax. This Court

has consistently held that the "total deficiency" for the purpose of computing the 50 per cent additions to tax for fraud under section 293 (b) of the Internal Revenue Code, is the difference between the tax liability and the amount shown on the original return, and that a taxpayer who has filed a fraudulent return may not, by subsequently filing an amended return and paying the tax due, bar the respondent from assessing additions to tax for fraud. *Herbert Eck*, 16 T. C. 511; *Harry Sherin*, 13 T. C. 221; *Aaron Hirschman*, 12 T. C. 1223; *Maitland A. Wilson*, 7 T. C. 395; *Thomas J. McLaughlin*, 29 B. T. A. 247. Cf. *P. C. Petterson*, 19 T. C. 486; *Nick* v. *Dunlap*, 185 F. 2d 674 (C. A. 5).

Any other result would make sport of the so-called fraud penalty. A taxpayer who had filed a fraudulent return would merely take his chances that the fraud would not be investigated or discovered, and then, if an investigation were made, would simply pay the tax which he owed anyhow and thereby nullify the fraud penalty. We think Congress has provided no such magic formula to avoid the civil consequences of fraud. *Stanley A. Anderson*, 11 T. C. 841, relied upon by petitioner, does not involve this issue. See also *McConkey* v. *Commissioner*, 199 F. 2d 892 (C. A. 4).

3. The petitioner's remaining contention is that the respondent has not sustained his burden of alleging and proving fraud by clear and convincing evidence. In his answer to the petition the respondent alleged that petitioner made understatements of income in its original returns and that all or part of the tax liabilities over and above the amounts reported on those returns were due to fraud with intent to evade tax.

Petitioner is a corporation, and as such can act only through its officers. During the taxable year ended July 31, 1945, Sidney Still was its president and treasurer, Nancy its vice president, and Michael its secretary. All three were aware, prior to the close of the taxable year and prior to the filing of the original corporate returns, that all sales were not reflected on its books. Despite this knowledge on the part of these officers, the corporation filed tax returns in which this unrecorded income was not disclosed. These returns were signed by Sidney Still as president and treasurer and notarized by Michael Weissman. Although petitioner was advised by its attorney and its accountant in December 1945, that amended returns should be filed disclosing the unreported income and that any additional taxes should be paid as promptly as possible, no such action was taken at that time. Amended returns were filed and additional taxes paid only at a later time when there was reason to believe that a revenue agent was hot on the trail.

The uncontroverted facts produced in this proceeding clearly support the conclusion that the petitioner willfully and fraudulently,

with intent to evade tax, failed to report its true and correct income for its fiscal year ended July 31, 1945, in the original returns filed by it for that year. It follows that petitioner is liable for the 50 per cent additions to tax for fraud determined by the respondent.

Reviewed by the Court.

*Decision will be entered for the respondent.*