UNITED DRESSED BEEF COMPANY, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30317–30321. Filed February 18, 1955.

*Alva C. Baird, Esq., Benjamin W. Shipman, Esq., William A. Cruikshank, Jr., Esq.,* and *Albert J. Galen, Esq.,* for the petitioners.
*Donald P. Chehock, Esq.,* for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Samuel Borne, Docket No. 30318; Rose Borne, Docket No. 30319; Benjamin Borne, Docket No. 30320; and Jean Borne, Docket No. 30321.

OPINION.

TIETJENS, *Judge:* The petitioners admit that Sam and Ben Borne, the sole stockholders of the corporation, received cash collections in excess of the ceiling price of meat sold by the corporation, as fixed by the Office of Price Administration. The amount of such collections is in issue. The respondent determined the deficiencies upon the basis that the collections amounted to $358,365.59, while the petitioners contend that they were not in excess of $129,000, the amount the individual petitioners reported on their returns. The second issue is whether the respondent erred in treating these collections as constituting income to the corporation and as dividends distributed by the corporation to the stockholders. The petitioners contend that no part of such cash collections was income to the corporation. The third issue is whether the assertion of additions to the tax for fraud was warranted.

The petitioners attack the respondent's estimate of the amount of the overceiling collections as being excessive as well as arbitrary and capricious. The records of the corporation showed none of the overceiling collections. No records of Sam or Ben Borne were made available from which the amounts reported in the individual taxpayer's returns could be verified or from which any calculation of the actual amount of the overceiling collections could be made. The corporation's records showed the amount of beef sold, in pounds, for each month during the period from January 1943 so long as price ceilings were in effect. The evidence shows that the rate of overcollections ranged from 1 cent to as much as 5 cents per pound, and that most of the customers paid these amounts. The testimony gave the proportion of the beef sales to civilian customers subject to collection of overceiling amounts, as ranging from 60 to 90 per cent or more. Sam said that 60 per cent of the customers paid. Allen said that he collected on 90 per cent of his sales. Lutz said that he collected from all of the customers assigned to him. Some collections were made on sales of pork and veal. The respondent estimated the amount of the collections by applying a rate of 1½ cents per pound to the quantity of beef sold by the corporation to its civilian customers. The rate of

1½ cents was adopted upon consideration of the facts that the rate of overcharge ranged from 1 to 5 cents and for most of the time was at least 2 cents, and that collections were not made on all sales of beef. Collections actually made on sales of pork and veal were disregarded in the respondent's computation. Where a taxpayer's records are inadequate to permit verification of the returns or if the records are unreliable the respondent may determine income by other reasonable means. *Hyman B. Stone*, 22 T. C. 893, 905 (1954), on appeal (C. A. 1). In the absence of better evidence the method of computation adopted appears reasonable and we have not been persuaded that the income determined thereby is excessive. The petitioners' difficulty is of their own making in failing to keep records of the amounts collected.

The petitioners complain that no net worth computation was offered by the respondent for corroboration or comparison. The respondent is under no obligation to make such a computation. The petitioners could have offered evidence of net worth if they believed it would show error in the respondent's computation, but they did not do this. The amounts of the deficiencies are sustained as no error has been proved.

The second issue is whether these collections were income to the corporation. The petitioners point out that the corporation received the full ceiling price for its meat, as the customers were billed at the prescribed ceiling prices for the meat delivered, and paid these bills, usually by check, and the overceiling amounts collected did not go into the corporation's accounts. It appears that the corporation's bookkeeper was unaware of such collections until after the years involved. The accountants who prepared the returns did so from the corporation's records and were not told of any additional income to the corporation. While they were told of some additional income of the individual taxpayers the true source of this was not explained to them. The petitioners contend that under these facts the overceiling collections were not income to the corporation since the corporation received all it was legally entitled to receive and the stockholders did not intend that it should receive more. They argue that in receiving these collections Sam and Ben Borne were acting in their individual capacities and not as officers of the corporation, and that the payments were similar to tips for special favors rendered by employees of the company.

The overceiling collections were clearly income belonging to the corporation. Sam and Ben Borne, the sole and equal owners of the stock, participated in the collections and shared the proceeds equally. Allen and Lutz, who collected some of the money and paid it over to Sam and Ben, did so on orders of the officers of the corporation which was their employer. The meat sold was owned by the corporation

and the amounts collected were measured by the pounds of meat sold to customers of the corporation. The exaction of the payments was possible because of the scarcity of meat and the willingness of buyers to pay more than the fixed prices. These amounts do not resemble tips to a minor employee, for no additional services were rendered as consideration for them and the responsible officers of the corporation directed these collections. On these facts we have found that the overceiling collections were made by the corporation. See *United States* v. *Joliet & Chicago Railroad Co.*, 315 U. S. 44 (1942); *Essex Construction Co.*, 12 T. C. 1212 (1949); *Currier* v. *United States*, (C. A. 1, 1948) 166 F. 2d 346, and *Miller-Smith Hosiery Mills*, 22 T. C. 581 (1954).

The case of *Harry Sherin*, 13 T. C. 221 (1949), relied upon by the petitioners, is not in point. Sherin owned 50 per cent of the stock of a corporation. The owner of the other 50 per cent arranged to receive cash overceiling payments in return for preferential services to certain new customers. This was without the knowledge of Sherin, who received no part of the payments. Upon learning of the arrangement Sherin repudiated it. Clearly under those facts the arrangement was not a corporate action and the proceeds to the one stockholder were not income to the corporation. Here stockholders of all the stock shared in the collection of overceiling amounts upon the corporation's products. Their action cannot properly be regarded as a venture separate from the corporation's business.

The case of *United States* v. *Chapman*, (C. A. 7, 1948) 168 F. 2d 997, also cited by the petitioners, does not deny that income of this nature belongs to the corporation. In that case the president and principal stockholder of a corporation was convicted of income tax evasion. It appeared that he collected overceiling amounts on meats sold by the corporation. He contended that such income must be attributed to the corporation and not to him, relying on *Commissioner* v. *Wilcox*, 327 U. S. 404 (1946), to the effect that embezzled moneys do not constitute income to the embezzler. In the *Chapman* case the court observed:

Here, there was no question but that the corporation received full payment for all meats sold by it, and the additional income to appellant resulted from the collection of what was in effect a premium for such sales by the corporation which he controlled as president and principal stockholder. We need not decide whether the corporation was entitled to recover those additional payments. However, even if it were shown that appellant collected as agent for the corporation, it would not necessarily follow that there would be no liability on his part for attempted evasion of the taxes due on such collections. * * *

The court did not decide that the money was not income to the corporation. The case does not help the petitioners. We hold that the overceiling collections here were income to the corporation.

On the fraud issue, the burden of proof is upon the respondent. Sec. 1112, I. R. C., 1939. It is necessary that fraud be proved by convincing evidence. The petitioners Sam and Ben Borne filed individual returns in which they omitted to report substantial amounts of overceiling collections as income. While the individual petitioners reported $129,000, the evidence shows that over $350,000 was collected. The amounts reported were in round figures and were obviously estimated. In total they amount to less than 1 cent per pound on 60 per cent of the beef sold. We think the evidence is clear that the collections exceeded twice the amounts reported. The amounts omitted were too great to be due to inadvertence. They say they kept records and reported the full amounts actually collected, but no such records were produced and the amounts reported cannot be verified. Where large amounts of income are undoubtedly received and over several successive years are omitted from returns, it is convincing evidence of fraud warranting the 50 per cent addition to the tax. *M. Rea Gano*, 19 B. T. A. 518. See also *Halle* v. *Commissioner*, (C. A. 2, 1949) 175 F. 2d 500; *Charles A. Rogers*, 38 B. T. A. 16, affd. (C. A. 6, 1940) 111 F. 2d 987; *Arlette Coat Co.*, 14 T. C. 751. As to the petitioners Sam Borne and Ben Borne, the additions to tax for fraud were properly asserted.

The petitioners Rose Borne and Jean Borne had no part in the business of the corporation and no part in the collection of overceiling amounts. The returns they signed were prepared for them by accountants from information furnished by their husbands. They did not testify and there is no evidence that they were aware of any omissions of income from these returns. The necessary affirmative evidence of intent to evade tax is lacking as to these petitioners. It follows that the additions to tax for fraud are not warranted as to Rose and Jean Borne.

The respondent asserted additions to tax for fraud against the corporation for its omission to report the overceiling collections in its returns. The stockholders took the view that this money was not income of the corporation, but belonged to them individually. The corporation's returns for fiscal years ended in 1943, 1944, and 1945 were prepared by accountants from the books of the corporation, but the accountants were not informed of the source of the additional money reported by the individual taxpayers as commissions. When the stockholders sought legal advice, in 1945 and 1946, they were advised by competent counsel that this money was not income to the corporation. While we consider this advice to have been erroneous, the corporation, in following it in connection with the returns filed for the fiscal years ended in 1945, 1946, and 1947, did not omit income fraudulently with intent to evade tax. *Spies* v. *United States*,

317 U. S. 492 (1943) ; *C. R. Lindback Foundation*, 4 T. C. 652 (1945) ; *Charles C. Rice*, 14 T. C. 503 (1950). Nor is it affirmatively shown by the respondent that the responsible officers of the corporation believed the cash collections to represent income to the corporation in the fiscal years ending prior to 1945. As pointed out in the *Spies* case, *supra*, it is not the purpose of the law to penalize honest differences of opinion or innocent errors made despite the exercise of reasonable care. We think the evidence is not sufficient to sustain imposition upon the corporation of the additions to tax for fraud. See *Charles C. Rice*, *supra*, and *L. B. Hirsch*, 42 B. T. A. 566, 573 (1940).

*Decisions will be entered under Rule 50.*