BOTWINIK BROTHERS OF MASS., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93775. Filed March 22, 1963.

*Arthur S. Sachs, Esq.,* and *Howard A. Jacobs, Esq.,* for the petitioner.

*Douglas D. Robertson, Esq.,* and *Alan L. Swartz, Esq.,* for the respondent.

990

OPINION.

RAUM, *Judge:* 1. *Fraud 1946–1954.*—It is agreed between the parties that the deficiency for each of the years 1946–1954 is barred by limitations [1] unless the returns were "false or fraudulent * * * with intent to evade tax." Sec. 276(a), I.R.C. 1939; sec. 6501(c)(1), I.R.C. 1954. And, of course, the burden is upon the respondent to prove fraud by clear and convincing evidence. We hold that he has not carried that burden in this case.

It must be kept in mind at the outset that the fraud to be established is the fraud of petitioner corporation, not that of Vera Green. The record reeks with her fraud, but her fraud consisted of embezzling or misappropriating petitioner's funds for her own benefit and falsifying its books and records to conceal that fraud, with the incidental consequence that petitioner's returns incorrectly reflected deductions based upon such falsified books and records. Were such returns "false or fraudulent * * * with intent to evade tax"? We think not in the circumstances of this case.

The Commissioner quite correctly argues that a corporation can act only through its officers and agents and that therefore their intentions must be imputed to the corporation. So much is hornbook law. See, e.g., *Irving S. Federbush,* 34 T.C. 740, 749; *Ace Tool & Eng., Inc.,* 22 T.C. 833, 843; *George M. Still, Inc.,* 19 T.C. 1072, 1077, affirmed 218 F. 2d 639 (C.A. 2); *Saven Corp.,* 45 B.T.A. 343, 355; *L. Schepp Co.,* 25 B.T.A. 419, 438–441. But the fundamental assumption in these cases is that the officer or agent was acting *in behalf of, not against the interests of,* the corporation. In the case of sole or dominant stockholder-officers who divert corporate funds for their own benefit, such action is not regarded as antagonistic to the corporation, since such stockholders to a large extent are merely "taking their own money" (*Ace Tool & Eng., Inc.,* 22 T.C. 833, 841–842; *Kann* v. *Commissioner,* 210 F. 2d 247, 251 (C.A. 3), affirming 18 T.C. 1032, certiorari denied 347 U.S. 967) and thus obtaining from the corporation what would otherwise be available to them as dividends. In such circumstances it may be a compelling conclusion that the normal consequences of the stockholder-officer's acts (i.e., the filing of incorrect corporate returns) were intended by him in behalf of the corporation and that the necessary corporate fraud was therefore present when the incorrect income tax returns were filed. Indeed, in a number of such cases where corporate fraud was found the courts have

---

[1] The notice of deficiency is dated May 23, 1961, and the returns for all the years were timely filed. See sec. 275(a), I.R.C. 1939; sec. 6501(a), I.R.C. 1954.

stressed the fact that the stockholders involved (acting alone or in concert) were either sole or dominant stockholders. *Auerbach Shoe Co.* v. *Commissioner*, 216 F. 2d 693, 697–698 (C.A. 1), affirming 21 T.C. 191; *Currier* v. *United States*, 166 F. 2d 346, 348 (C.A. 1); *Lash* v. *United States*, 221 F. 2d 237, 239 (C.A. 1); *Irving S. Federbush*, 34 T.C. 740, 750; *United Dressed Beef Co.*, 23 T.C. 879, 886; *United Mercantile Agencies, Inc.*, 23 T.C. 1105, 1112–1114; *Ace Tool & Eng., Inc.*, 22 T.C. 833, 841–842.

The present case is to be sharply distinguished from the foregoing decisions. Here, Vera Green owned only 40 out of a total of 750 shares of petitioner's stock. And even if her husband could be regarded as *particeps criminis* with her in her numerous misappropriations—a matter which at best is doubtful on this record and which respondent has certainly not proved by clear and convincing evidence[2]—the Greens together were merely minority stockholders as against the interests of the Botwinik family.

Vera Green's acts were not done in behalf of petitioner. To the contrary, petitioner was a victim of her wrongful conduct. Accordingly, her knowledge cannot be attributed to petitioner on the theory that she was acting for it, when her interests were in fact antagonistic to petitioner.[3] The fact that she was a minority stockholder, whose interests were adverse to those of the corporation and the majority stockholders, is of crucial significance here. Cf. *All Americas Trading Corporation*, 29 T.C. 908, 913; *Harry Sherin*, 13 T.C. 221, 228–229; *United Dressed Beef Co.*, 23 T.C. 879, 886.

This is not a case like *George M. Still, Inc.*, 19 T.C. 1072, affirmed 218 F. 2d 639 (C.A. 2), where the dominant stockholder-officer had learned of the wrongful diversion of corporate funds by two minority stockholders and had obtained undertakings by the wrongdoers *prior to the filing of the return*, to restore the unauthorized withdrawals. In those circumstances the return was plainly fraudulent. In this case there is no credible evidence that any of the Botwiniks or anyone representing them or their majority interest in the corporation were aware of Vera Green's misappropriations prior to or at the time of the filing of any of the returns for the period 1946–1954.

The Government has undertaken to establish that the majority stockholders here "condoned" the improper corporate diversions by

[2] Moreover, there is no showing that he knew anything about petitioner's books or that he had any inkling whatever that her misappropriations would be reflected in the books in such manner as to result in incorrect income tax returns.

[3] See 13 Am. Jur. sec. 1113 for a collection of cases generally in the field of corporate law that the knowledge of an officer or agent will not be imputed to the corporation where his improper acts are adverse to the corporation.

Vera Green. The evidence is far from convincing. When her wrongful conduct was discovered she was dismissed, and, since the Botwiniks were more interested in restitution than criminal prosecution, assets of the Greens were required to be placed in trust to secure repayment. To be sure, other evidence points in the opposite direction—*e.g.*, no substantial amount of reimbursement has yet been received, and Albert Green has continued as a high-salaried employee. But plausible explanations were offered for these circumstances. The matter at best is in doubtful balance, and if this were a dispositive issue the Government has not carried its burden by the requisite clear and convincing evidence. But it is far from clear that it is a dispositive issue. Even if proved it would establish only that *after* the returns for 1946–1954 had been filed, the other stockholders and the corporation condoned the corporate diversions. At most, therefore, it would have only the following consequences: That the improper deductions taken during 1946–1954 would perhaps not be offset by corresponding deductions for theft losses, cf. *George M. Still, Inc., supra.* This, however, would merely go to the correctness of the basic deficiencies for those years, but would not necessarily establish the requisite fraud at the time the returns were filed. Absent fraud, we do not reach the basic deficiencies, which are otherwise barred, and we therefore do not consider, among other things, whether petitioner would in any event be entitled to deductions for embezzlement losses during the years 1946–1954.

2. *Embezzlement loss 1955.*—The Government has conceded the absence of fraud for 1955, and petitioner admits that this year is not barred by limitations. There remains nevertheless the question whether petitioner is entitled to a deduction in 1955 for theft loss in respect of the $22,932.92 reimbursement of alleged traveling expenses of Albert Green which Vera Green obtained from petitioner in 1955. Sec. 165, I.R.C. 1954. The burden in respect of this issue is upon petitioner, and we hold that it has not been met. Section 165(e) provides that a theft loss "shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." Petitioner has failed to present convincing evidence that it discovered the "theft" or embezzlement relating to this item in 1955. It is therefore not entitled to the deduction. Moreover, in view of the trust agreements we cannot say that the loss was "not compensated for by insurance or otherwise" within the meaning of section 165(a). This issue must be decided against petitioner.

*Decision will be entered under Rule 50.*