Marvin Dugro Buttles v. Commissioner.
Buttles v. Commissioner
Docket No. 3510-63.
United States Tax Court
T.C. Memo 1964-236; 1964 Tax Ct. Memo LEXIS 103; 23 T.C.M. (CCH) 1420; T.C.M. (RIA) 64236; September 9, 1964
Paul M. Bodner, for the petitioner. O'Hear W. Fraser, Jr., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in petitioner's income tax for the calendar year 1954 in the amount of $4,384.42. Petitioner has conceded all but *104 one of the adjustments to his return which were made by the statutory deficiency notice so that the sole issue now remaining before us is whether the petitioner is entitled to a claimed theft loss deduction of $5,000 under section 165(a) and (c)(3) of the Internal Revenue Code of 1954. [1]
Some of the facts have been stipulated and are so found. Marvin Dugro Buttles, hereinafter referred to as petitioner, filed his individual income tax return for the calendar year 1954, with the district director of internal revenue, Upper Manhattan, New York, New York. On such return, which was timely filed on April 15, 1955, petitioner claimed a theft loss deduction in the amount of $5,000 by attaching thereto a memorandum reading in pertinent part: Prior to Mr. Buttles *105 departure for Europe on March 6, 1954, Mrs. Buttles [his mother] had given him as a gift a diamond brooch * * * [which] had been inherited through taxpayer's father's side of the family, and as elder son, taxpayer's mother felt that he should have the pin in the event of her death. * * * Since she gave the brooch to taxpayer, * * *. When Mr. Buttles visited his mother's apartment after his return from Europe at the time of death, the apartment was in a considerable state of confusion. There were clothes strewn around, and one friend of the family located two gold bracelets lying under articles on the bedroom floor. Taxpayer suspected that things were not all as they should be and had a detective look into the matter, after he discovered that the aforementioned brooch that his mother had given him could not be located. Mr. Buttles had left it in safe-keeping with her while he was in Europe. Petitioner went to Europe on or about March 6, 1954, at which time the brooch was in the possession of his mother. She became seriously ill a short time later and was taken from her apartment in New York City to Doctors' Hospital on March 13 or 14 and died at the hospital on March 15, 1954. Petitioner *106 returned from Europe later that same day and though a search was made the brooch could not be found. On March 20, 1954, a friend of petitioner reported the above circumstances to the police, and city detective, William J. Curnan, on that same day went to the mother's apartment and interviewed petitioner, who stated that his mother's pin, with a value of $2,500, had been lost. On September 27, 1955, petitioner, who was then serving as executor of his mother's estate, made an affidavit which was filed in Surrogate's Court in connection with the determination of the New York estate tax upon her estate and which affidavit also comprised a claim on petitioner's part against his mother's estate. Said affidavit reads in pertinent part: I make this affidavit to explain the consideration and other facts relating to a demand note of the decedent, dated August 18, 1951, in the face amount of $5,000, which is payable to me. This note was executed by the decedent to evidence her indebtedness to me in the amount of $5,000 for loans I had made to her and expenses I paid in her behalf during the period from 1941 to August 18, 1951. * * * Although the jewelry owned by my mother had a value *107 in excess of $10,000, she was very fond of it and she was reluctant to sell it if this could be avoided. * * * In 1951, it was agreed that the amount I had loaned to her, including the amount remaining unpaid on her note dated October 23, 1942, was in excess of $5,000. We agreed that a new note would be executed to evidence her indebtedness, which would be in the sum of $5,000, and that the old note would be cancelled. On August 18, 1951, my mother executed and delivered to me a demand note bearing that date in the sum of $5,000. A photostatic copy of this note is attached hereto. No part of the note dated August 18, 1951 was ever repaid by my mother prior to her death. My brother, Paul V. Buttles, who is entitled to the income from the entire residue of my mother's estate, has approved the payment by me as executor of the note dated August 18, 1951, as evidenced in an instrument executed by him on May 28, 1955, a photostatic copy of which is annexed hereto. On May 31, 1961, a revenue agent proposed to disallow petitioner's claimed theft loss deduction and petitioner made an affidavit in protest dated August 1, 1961, stating in pertinent part: The casualty loss of $5,000 *108 deducted in the return and disallowed by the Revenue Agent arose from the theft of a diamond brooch, the property of taxpayer, * * *. A rider setting forth the facts concerning the theft was attached to 1954 U.S. income tax return of taxpayer and is incorporated in this Protest by reference. It is to be noted that the diamond brooch was a gift to taxpayer by his mother Mrs. Nana H. Buttles prior to March 6, 1954. Mr. Buttles left on Mar. 6, 1954 for a vacation business trip to Europe and left the brooch with his mother at her apartment expecting to take possession of the brooch on his return. * * * Petitioner did not appear as a witness at the trial of this case but his deposition, which was taken on March 18, 1964, and signed and sworn to by him on March 27, 1964, was offered jointly and received in evidence as Exhibit 3-C. Petitioner's version of the facts had undergone a drastic change by the time his deposition was taken. In answer to the question: "How did you acquire this brooch?" he replied: "My mother gave it to my [me] in lieu of a loan of $5,000 that I made to her." Later in the deposition petitioner was asked to describe the circumstances under which he obtained the *109 brooch and replied: What do you mean obtained it? I had a note for $5,000 from my mother and she, so that I could have the brooch in lieu of it, she wanted me to have it anyhow, eventually, and I said I thought that was a fair deal, what was I going to do with it? I didn't want to keep it. She could use it. It made her happy and she liked it so much. Petitioner was then asked: Q. On what date did your mother give you the jewelry? and he replied: A. I can't answer that. I can tell you before, we will say, Christmas of '53, somewhere there. I don't know just how far before, I couldn't possibly remember, but it seems to me - there was no reason for me to remember them. Q. What did you mother give you the brooch for, Mr. Buttles? A. For the note, to reimburse for the note. Q. In other words, Mr. Buttles, is it that the jewelry was given to you in satisfaction of the note? A. That was the intent. In fact, I considered that she no longer owed me $5,000 when she told me that the brooch was mine. Q. Mr. Buttles, do you recall having told us, by way of a protest letter to the Appellate Division, as well as by way of a statement attached to your return, that this jewelry *110 was a gift to you from your mother? A. I don't recall it, but if I did, then I probably didn't distinguish between a gift and a debt. That was, those things weren't important to me, I didn't think and if I said such a thing, it was due to a statement that was given to me to sign by my lawyers who have done all my legal work since 1939 and I think they are reputable people. * * *
Q. Mr. Buttles, it is your story then that this brooch was given to you by your mother in exchange for the satisfaction of a $5,000 note which she executed some time prior to 1954, is that correct? A. That's correct. Q. You did say earlier, however, that this was a gift to you by your mother? A. Well, it was originally intended as a gift. Q. Yes or no, Mr. Buttles. A. I don't remember, but it was originally intended to be a gift, eventually when she died or whenever, but then she decided that she would rather straighten it out with the $5,000 and get that off her chest. Q. She then, in fact, gave you the brooch in satisfaction of the note, is that correct? A. That's correct. At this point the petitioner's affidavit of September 27, 1955, which was filed in the Surrogate's Court was *111 identified as Exhibit B and the questions and answers continued. Q. Mr. Buttles, I hand you Respondent's Exhibit B for identification and ask you if you can tell us what this is? A. It's about the note. Q. What is this document, Mr. Buttles? A. It's an affidavit. Q. Who is that affidavit signed by, Mr. Buttles? A. I signed it. Q. Did you say you signed it, Mr. Buttles? A. Yes, I did say I signed it. Q. Did you sign that affidavit under oath? A. Yes. Q. What is the date of that affidavit? A. September, 1955. Q. Did you say September? A. September of 1955. Q. What date? September the what? Could it be September 27th? A. Yes, I see it now. Q. September 27, 1955? A. That's right. The deposition was finally closed with the following question and answer: Q. Mr. Buttles, would you know the difference between paying off a note and a gift? A. I think so, yes. Petitioner's current contention that he obtained the brooch from his mother in payment for and satisfaction of her $5,000 note is substantiated only by his own testimony. He called Agnes McGovern, a long-time friend of his and his mother, as a witness, but we found her admissible testimony to *112 be mainly confusing. It was in substance that Mrs. Buttles wore the brooch constantly; that she could not recall a period when it was not in her possession; that she had never seen the brooch in petitioner's possession; and that Mrs. Buttles always referred to the brooch as "Marvin's pin." It is fundamental that the threshold consideration for a claimed theft loss deduction under section 165(a) and (c)(3) (hereinbefore set out in footnote 1) is that the taxpayer be the owner of the purloined property. In New Colonial Co. v. Helvering, 292 U.S. 435, the Supreme Court said: Whether and to what extent deductions shall be allowed depends upon legislative grace; * * *
Obviously, therefore, a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms. We have carefully considered the evidence of record and have quoted at length from exhibits and testimony which demonstrate the three successive positions taken by petitioner regarding ownership and his claimed acquisition of the diamond pin in question. His three positions have been: first, that it was his mother's pin; second, that she had given it to him; *113 and third, that she had "given" it to him in satisfaction of, and in payment for, her $5,000 note. We can speculate that petitioner's last change in position may have been prompted by the realization that if it were established that he had obtained the pin by gift from his mother that the amount of his deduction under section 165(b) of the Internal Revenue Code of 1954 would be the adjusted basis provided in section 1011, Internal Revenue Code of 1954, and might therefore be severely limited. See Jane U. Elliott, 40 T.C. 304. Be that as it may, we are entirely unimpressed by petitioner's explanation that his various positions were due to statements given him to sign by his lawyers and that such things weren't important to him. It is our conclusion from the entire record that petitioner has not satisfied his burden of proving ownership of the missing diamond pin and we so hold. Even if we were to assume that petitioner's last position were the true one and that he had acquired the pin from his mother as in payment for her note, he would be no better off because it is evident from the last paragraph of his affidavit *114 of September 27, 1955, which was filed in the Surrogate's Court and which is set out supra that nothing stood between him and collection of the note in full from his mother's estate. We would even be justified in assuming on the basis of the record before us that such payment was made, and this obviously brings the instant case within the ambit of George M. Still, Inc., 19 T.C. 1072, affirmed per curiam, 218 F. 2d 639 (C.A. 2). Decision will be entered for the respondent. Footnotes
1. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(3) losses of property * * * if such losses arise from * * * theft. * * *↩